## Jean B. Jeannin *v.* Mr. and Mrs. Charles DeBlanc.

| 11 | 465 |
| 44 | 499 |
| 11 | 465 |
| 104 | 790 |
| 11 | 465 |
| ,f105 | 660 |

Until plaintiff pays defendant one half of the cost of the wall, it is not a wall in common, but remains the exclusive property of the defendants, though resting one-half upon the plaintiff's land; and defendants may open or shut apertures in it, at pleasure, subject only to the police regulations of the city. In this she exercises not a right of servitude, but a right of property.
Code, 671, 672, 681, 692.

APPEAL from the Second District Court of New Orleans, *Lea*, J.

*Preaux*, for plaintiff and appellant. *J. & E. Bermudez*, for defendant.

Spofford, J. We adopt the following opinion of the District Judge :

" The defendant, availing herself of the provisions of Art. 671 of the Civil Code, rested one-half of her wall on the ground of the plaintiff; the wall is shown to be thirteen inches thick. The plaintiff did not contribute and has not contributed, in any manner, to the building of said wall. Since the construction of the wall, the defendant has caused certain openings to be made in it, consisting of grated windows in the second story, and of ventilators below the ground flooring. The plaintiff alleges that the defendant had no right to make said openings in the wall thus constructed, and that in so doing, she usurps the right of view upon his premises to his injury and damage. Therefore, he prays that the defendant be condemned to close the said openings at her proper cost, and to pay the plaintiff damages in the sum of $600, with costs., &c.

There is no question of servitude presented by the pleadings and evidence, since it is conceded that the plaintiff may at any time close the apertures and grated windows by making the wall a wall in common ; but, in so doing, the plaintiff would have to pay one-half of its value.

The defendant contends that, until the wall is made common, it is her exclusive property, and that she has therefore a right either to pull it down altogether, or to make apertures in it, as she pleases. It appears to me that this view of the case is correct ; indeed, if the exclusive right of property is conceded to the defendant, it seems to be a necessary consequence ; and the only limitations placed upon this right of property, in the Code, are those having reference to the right of making such a wall common, and to the restricted use of it after it is made common."

These views, which led the court below to give judgment for the defendant, are supported by the text of the Code.

" He who first builds in the cities, towns or suburbs of this State, in a place which is not surrounded by walls, may rest one-half of his wall on the land of his neighbor ; provided he builds with stones or bricks at least as high as the first story, and not in frame or otherwise ; and provided the whole thickness of this wall do not exceed eighteen inches, not including the plastering which must not be more than three inches. But he cannot compel his neighbor to contribute to the raising of this wall." C. C., 671.

" If the neighbor be willing to contribute for his half to the building of the wall thus raised, then this wall is a wall in common (*mur mitoyen*) between the proprietors. The neighbor, who has refused to contribute to the raising of this wall, preserves still a right of making it a wall in common, by paying

59

to the person who has made the advance, the half of what he has laid out for its construction, according to the rules hereafter established." C. C., 672.

"Neither of the two neighbors can make any cavity within the body of the wall *held by them in common*, nor can he affix to it any work without the consent of the other, or without having, on his refusal, caused the necessary precaution to be used, so that the new work be not an injury to the rights of the other, to be ascertained by persons skilled in building." C. C., 681.

"One neighbor cannot, without the consent of the other, open any window or aperture through the wall *held in common*, in any manner whatever, not even with the obligation, on his part, to confine himself to lights, the frames of which shall be so fixed within the wall that they cannot be opened." C. C., 692.

It follows that, until the plaintiff pays the defendant one-half the cost of the wall it cannot be a wall in common, but remains the exclusive property of the defendant, though resting one half upon the plaintiff's land.

And it being the exclusive property of the defendant, it follows that she may open or shut apertures in it, at her pleasure, subject only to the police regulations of the city.

In this she exercises not a right of servitude, but a right of property.

But the plaintiff says that the judgment should, at least, be so amended as to recognize his right to shut the apertures by erecting a wall or enclosure opposite to them.

By the same right that the defendant builds a wall with apertures, undoubtedly the plaintiff may build one facing it without apertures, if it shall so please him.  "In suo pariete potest quis fenestros fucere vicino etiam invito; vicinus contra ædificando eos obscurare potest."

But, as this right of the plaintiff is not put in controversy by the pleadings, so it is not barred by the judgment.

Judgment affirmed.

BUCHANAN, J.   As the idea is very general in this community, that a proprietor of a wall adjoining the land of another, has not the right to make openings in such wall, it is proper to notice a change in our legislation on this subject, made by the Code of 1825, and the reasons given by the framers of that Code for the change.

The Articles 43 and 44, on page 136 of the Code of 1808, permitted the proprietor of a wall not held in common, adjoining the estate of another, to make apertures or windows through said wall, under certain restrictions. Those two Articles were omitted in the Code of 1825: and we might have supposed that the intention of the Legislature, in suppressing those Articles, was to prohibit absolutely the making of openings in walls thus situated; were it not for the reasons given for the suppression of those Articles by the jurists charged with the amendment of the Code, in their report or *projet.* See Travaux préparatoires, page 73.  "Nous avons cru devoir supprimer ces deux Articles qui proscrivent au propriétaire d'un mur non-mitoyen, joignant immédiatement l'héritage d'autrui, de n'y faire des ouvertures ou fenêtres qu'à une certaine hauteur, et avec des barreaux ou à verre dormant.  *Nous avons pensé que chacun doit être le maître de faire dans son bien ce qui lui plaît, et par conséquent, d'ouvrir dans son mur telles fenêtres que bon lui semble.*"

The argument of the learned counsel of plaintiff against the exercise of the right claimed by defendant, reposes entirely upon the difference between the French Code and the Code of Louisiana, in relation to the rights of adjoining

JEANNIN<br>v.<br>DEBLANC.

proprietors of land in towns and cities. By Article 23, page 132, of the Code of 1808, repeated in Article 671 of the Code of 1825, the right is given of placing one half of the boundary wall of a town lot on the adjoining lot. This is an appropriation of the property of another, which is not copied from the Code Napoleon, nor sanctioned by any law in France. The argument drawn from this difference of legislation, is, that all the remarks of French commentators touching the right of the proprietor of a wall not common, to make openings in said wall, can have no application to a state of things unknown to the French law, to wit : the wall belonging to one, and yet built upon the land of another, without the consent of that other. But it strikes me that this makes no difference as to the right of the party who owns the wall. By the terms of Article 672 of our Code, the neighbor upon whose land this wall is built, has no property in the wall unless he pays for it. Until he does so pay, there is, for the neighbor, a positive expropriation of so much of his land as is covered by the wall. And this, after all, is only one among many proofs, that the right of private property is less sacred in this country than it is in the monarchical States of Europe.

However distasteful it may be to the plaintiff, he must give up the idea that he is the owner of soil which another enjoys without his consent and against his will. *Ita scripta est lex.*

I concur in the opinion pronounced by Mr. Justice SPOFFORD.