## MAX MICKEL

*v.*

## JOHN YORK *et al.*

*Opinion filed October 24, 1898.*

1. PARTY WALLS—*ownership of party wall is not joint nor in common.* The ownership of a wall erected as a party wall, and resting partly upon the soil of each adjoining proprietor, is not joint nor in common, but each proprietor owns in severalty the portion of the wall resting on his own soil, with an easement of support in that portion resting on the soil of the other.

2. SAME—*when ownership of party wall is sole.* A wall built by a party at his own expense between his own lot and the one adjoining, and resting partly on each, under a contract providing that the adjoining owner might elect to use the same upon paying one-half the cost of the wall used, measured by its value at the time of such election, belongs, until the right of election is exercised, to the builder, with a permanent right to have that part of the wall resting on the adjoining lot remain so, as against the owner of such lot or his grantees with notice.

3. SAME—*owner of wall liable to adjoining owner for damage from its fall.* The absolute owner of a party wall, subject to the right of the adjoining proprietor to become the owner of the part standing upon his lot by electing to use the same and pay his share of its cost, is liable, before such election, for damage to such adjoining proprietor resulting from the falling of the wall, owing to the owner's negligence in its construction or use.

*Mickel* v. *York,* 66 Ill. App. 464, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. FRANK BAKER, Judge, presiding.

On the 8th of May, 1892, the appellant, Max Mickel, and his sister, Annie Pitzele, were the owners of a lot in the city of Chicago adjacent to the one owned by the appellee John York, and on that day the respective parties, York being the party of the first part, entered into a party wall agreement, containing, among others, the following provisions:

"It is hereby mutually agreed by the several parties, in consideration of the premises, that said party of the first part may so build and erect a party wall, twenty and sixteen inches in thickness, on the north side of the said lot of the party of the first part, that the center of said party wall shall be on the division line of the said lots hereinbefore mentioned of the said parties of the first and second parts, respectively. And this indenture further witnesseth, that the said party of the first part does hereby covenant, promise, grant and agree that the said party of the second part, their heirs and assigns, shall and may, at all times hereafter, have the full and free liberty and privilege of joining to and using said partition above mentioned, as well below and above the surface of the ground, and along the whole length or any part of the length thereof, any building which he or they, or any of them, may desire or have occasion to erect on the said lot of the party of the second part, and to sink the joist of such building or buildings into the said partition to the depth of.....inches, and no further: *Provided always*, nevertheless and on this express condition that the said party of the second part, their heirs and assigns as aforesaid, before proceeding to join any building to the said partition wall, and making any use thereof or breaking into the same, shall pay or secure to be paid unto the said party of the first, his heirs and assigns aforesaid, the full moiety or one-half part of the value of said party wall, or so much thereof as shall be joined to or used as aforesaid, which value shall be the cost price at the time when such wall is to be used by said party of the second part, as fixed, estimated and assessed by three disinterested mason contractors. And said parties further agree and covenant that if it shall hereafter become necessary to repair or rebuild the whole or any portion of the said party wall or walls, the expense of such repairing or rebuilding shall be borne equally by them, their respective heirs and assigns, as to so much of said

portions of said walls as said parties, their heirs and assigns, shall or may use jointly. It is further mutually agreed between the said parties that this agreement shall be perpetual, and at all times be considered as a covenant running with the land."

York, after this contract was made, proceeded to build the party wall and to construct a building upon his property, which was used and occupied by him until the 10th of January, 1893, when it was destroyed by fire. The party wall was left standing, but in so dangerous a condition that on the 19th of January, 1893, the commissioner of public works of the city of Chicago notified York to have the wall of the building taken down at once. On the 18th of January, 1893, Max Mickel and Annie Pitzele joined in a written notice to York to either pull down the wall or secure it, so as to avoid any impending or possible danger, loss or damage resulting from its unsafe condition. On the 20th of January, 1893, the wall was blown over and upon two buildings owned by the appellant and his sister, crushing the buildings completely. The claim against Campbell results from what was alleged to be a contract with York, by which it is claimed Campbell was to remove the *debris* and secure the wall.

Appellant brought suit against appellees, and a trial was had upon which the foregoing facts appeared without dispute. The court instructed the jury to find a verdict in favor of the defendants, and on such verdict the court entered judgment. From that judgment a writ of error was sued out from the Appellate Court for the First District by plaintiff, and the judgment was affirmed. He now brings this appeal to review that judgment of affirmance.

Pam & Donnelly, and Moses, Rosenthal & Kennedy, for appellant.

Moran, Kraus & Mayer, and Kerr & Barr, for appellee York.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

It is insisted by appellant that the wall, at the time it fell, was owned by York, while York insists, as was the view taken by the court below, that the wall was, from the time of its completion, the property of all the parties to the contract; that York owned so much of the wall as rested upon his lot, with an easement in the remaining portion, and that Mickel and his sister owned all of the wall which rested upon their lot, with an easement in that portion of the wall which was upon the lot of York.

The contract provides that Mickel and his sister, and their heirs, before proceeding to join any building to the wall, and before making any use thereof or breaking into the same, shall pay or secure to be paid unto York, his heirs and assigns, the full moiety or one-half part of the value of the wall, or so much thereof as shall be joined to or used, which value shall be the cost price at the time when such wall is to be used by Mickel and his sister. The contract further provides: "And said parties further agree and covenant that if it shall hereafter become necessary to repair or rebuild the whole or any portion of the said party wall or walls, the expense of such repairing or rebuilding shall be borne equally by them, their respective heirs and assigns, as to so much of said walls as the said parties, their heirs and assigns, shall or may use jointly."

Where a party wall of adjoining buildings rests partly upon the soil of each owner, and was constructed as a party wall, the owners are neither joint owners nor tenants in common of such wall. Each is possessed in severalty of his own soil up to the dividing line, and of that portion of the wall which rests upon it; but the soil of each, with the wall belonging to him, is burdened with an easement or servitude in favor of the other, to the end that it may afford a support to the wall and building of such other. But where a party wall is constructed on

175—5

the line between adjacent lots, resting partly on each, by one of the lot owners, under a parol or written agreement, by which agreement the other owner agrees to pay one-half the value of the wall when he elects to use it, the builder of the wall owns it absolutely, with a permanent right in him and his grantees to have one-half the wall stand on the land of the other while the other retains title, and also after it has passed to an assignee with notice of the rights of the owner of the wall. If, however, by agreement the owner of the lot who did not build the wall has a right to elect to pay one-half its value and use the same, and he does so, he thereby becomes the owner of not only the one-half standing upon his own land, but has an easement in the other half standing on the lot of the one who built the wall.

In *Glover* v. *Mersman,* 4 Mo. App. 90, (a case similar to this,) it was said: "The plaintiff was not necessarily the absolute owner of one-half the wall because that stood upon his lot. It had been so placed by his license in the agreement of May, 1871. By that agreement the ownership naturally resulting from his title to the soil was modified, if not wholly surrendered, for the time being. A stipulation to the effect that, upon building a house against the wall, and paying to the defendant one-half of what it would then cost to build such wall, he should have the right to use it as a party wall, was equivalent to an agreement that until such conditions were fulfilled he should not have the right so to use it. The wall, therefore, was the sole property of the defendant, and for any negligence or mismanagement in its keeping he was liable, as in every case when such negligence or mismanagement by an owner causes injury to another."

In *Brown* v. *McKee,* 57 N. Y. Ct. of App. 684, it was said: "Where, under a parol agreement between adjoining proprietors, one builds a party wall one-half upon the premises of each, the other agreeing to pay one-half the value when he shall use the wall, upon the erection of the wall

the agreement becomes valid in equity. The builder owns the wall absolutely until the other elects to use the same, with a permanent right in him and his grantees to have one-half the wall stand on the land of the other, not only while the other retains title, but after it passed to an assignee with notice of the rights of the owner of the wall. If the owner of the land burdened with this easement elect to use the wall and pay half its value, he thereby becomes owner not only of the one-half standing upon his own land, but has an easement in the other half."

In *Gorham* v. *Gross*, 125 Mass. 232, by indenture between the plaintiffs and defendants, either party was authorized to build a wall of brick, with stone foundation, half on the land of each, and half the cost of which was to be paid by the other if he used it. The defendants made a contract with a firm of masons, by which the latter were to furnish all the materials and labor in building the stone and brick work, including the lathing and plastering, according to certain specifications. After the wall had been completed by the masons and accepted by the defendants, it fell and crushed the building and property upon the adjoining land of the plaintiffs. The court says (p. 240): "The whole wall, when completed and accepted, was, by virtue of the indenture between the defendants and the plaintiffs, owned by the defendants until they should be reimbursed half the cost of it by the plaintiffs. (*Richardson* v. *Tobey*, 121 Mass. 457.) For the injury caused to property on the adjoining land by the falling of this wall by reason of its defective and unsafe condition, whether owing to other than negligence or that of the masons who had built it, the defendants are responsible."

In *Maine* v. *Cumston*, 98 Mass. 317, the city of Boston, owning certain lots, executed a written agreement to convey to one Blanchard a certain lot with this condition: So long as said lot remains unoccupied by a building, the said Blanchard shall permit the proprietor of each adjoining lot who may build, to erect one-half the thickness

of the division wall on said lot, and shall pay to the proprietor so erecting said wall a proportionate part of the cost thereof for such part as he or his assigns may use; and if Blanchard erects a building on said lot he shall build one half of the thickness of the division wall on each unoccupied adjoining lot.    By *mesne* conveyances Blanchard's lot was conveyed to one Ames, who built a house, erecting one-half of a party wall on an adjoining lot owned by the city.    By *mesne* conveyances Ames' title came to plaintiff, and the city sold the adjoining lot, on which one-half the thickness of the party wall rested, to the defendant, who built and used that party wall.    On a suit by plaintiff against the defendant to recover the value of one-half of the wall the court said:    "We have no doubt of the liability of the defendant for the cost of the partition wall which he made use of in constructing the house on the lot of land adjoining that of the plaintiff.    The property in the whole wall passed to the plaintiff by the deed under which he claims title.    *   *   *   The plaintiff, under his deed, which contains an express reference to the terms of the original purchase from the city, had a right to maintain the whole wall as a part of his house, until the city, or some one claiming title under the city, built on the adjacent land and made use of the partition wall, or some part of it.    When that took place, then the plaintiff's property in that part of the wall on the adjacent lot ceased, except so far as he might claim a right or easement of support in it as a partition wall, and he became entitled to recover the cost of its erection."    To the same effect are *Mason's Appeal*, 70 Pa. St. 26; *Goldsmid* v. *Starring*, 16 Mackey, 582; *Burlock* v. *Peck*, 2 Duer, 90; *Jeannin* v. *DeBlanc*, 11 La. Ann. 465; *Lavergne* v. *Lacosta*, 26 id. 507; *Sullivan* v. *Graffort*, 35 Iowa, 531; *Roberts* v. *Bye*, 30 Pa. St. 375; *Fettretch* v. *Leaming*, 9 Bosw. 510.

The case of *Gibson* v. *Holden*, 115 Ill. 199, is relied on as sustaining a different principle from that herein announced, and sustained by the foregoing authorities.    In

that case the contract, as interpreted by this court, constituted the owners of the adjoining lot joint proprietors of the wall from the moment it was built. That interpretation resulted from various provisions in the contract. It was there agreed that the wall which Holden was to build should continue to be a party wall forever, which the court held to manifestly mean from the time of its erection. It was further provided that the said owners should share jointly in the expense of keeping, maintaining, repairing and rebuilding the wall, whether Armstrong, the other owner, made use of it or not. The amount to be paid by Armstrong was not one-half of the value of the wall at the time he chose to appropriate it, but one-half the cost of its erection. In the light of these provisions the contract was held to be one in which Holden undertook to advance the money and build a wall for the joint benefit of himself and Armstrong, and by which Armstrong was to become at once invested, jointly with Holden, with the title and ownership, one-half of the cost to be repaid to Holden whenever Armstrong or his grantee should make use of the wall, Holden in the meantime to have sole possession of the wall as security for such payment. This may be said to have been the interpretation of this court put upon the contract, as shown by its language on page 206, where it is said: "While, however, it is clear that the title or ownership of the wall is joint the moment it is built, and that it so continues, it is also clear that in order to secure Holden for his advances on the joint account in building the wall, the sole possession of the wall shall be in Holden alone, —or, in other words, that Armstrong shall not be allowed to use the wall until he shall repay those advances. Armstrong has title to one-half the wall, but Holden retains the possession of the whole as a security for his debt. There is no language used applicable to a sale. When Armstrong desires to use the wall he is not to pay for one-half its value, or a sum to be agreed upon as the

price of one-half of the wall, as we should expect in case of a sale. He is simply 'to first pay to said Holden the cost of one-half part of said wall.'" After thus construing the contract in that case and holding with reference to that construction, the court then proceeded in accordance with the principle herein stated, and said: "Cases, therefore, where parties are, by the deed under which they take title, given one-half of a wall as a party wall when or upon condition of making payment, and cases in which the owner of one lot has licensed the owner of the adjoining lot to build a wall for himself, resting one-half of it on each lot and reserving the privilege of thereafter purchasing one-half of the wall as a party wall, are not analogous. In all such cases the title to the whole wall may be regarded as appurtenant to the lot of the builder, and so passing by every conveyance of it until a severance of the half by the payment of the purchase money. The sale of the half of the wall does not occur nor the title to it pass in those cases until the payment is made, and so, necessarily, it is constructively a sale by the assignee of so much of the wall. His right to the purchase money is not because he is the assignee of the covenant running with the land, but because he is the vendor of so much of the wall."

There is nothing said in *Gibson* v. *Holden, supra,* in conflict with what is here stated. The principle herein announced is in accordance with what is said in the well considered case of *Tomblin* v. *Fish,* 18 Ill. App. 439. The contract in this case expressly provides that plaintiff, before making any use of or joining any building to the wall, shall pay or secure to the defendant York the full moiety or one-half part of the value of the said party wall, or so much thereof as shall be joined thereto or used, which value shall be the cost price at the time when such wall is to be used. The contract expressly provides, further, that York shall build that wall. By the terms of that contract York retained the ownership

of what he had placed upon the plaintiff's land until he should be paid for it, and he had a right to have it supported on the land of plaintiff under this contract. The wall having been built on the plaintiff's land under this agreement, which amounts to a license with an interest, is not thereby incorporated and lost in the land or lot, but remains a separate property, still belonging to the builder until he is paid therefor. York therefore was the owner of this wall, and was liable for any and all damage for failing to maintain it in a safe condition.

Wood, in his work on Nuisances, (sec. 225, vol. 1,) says: "Where a party wall is erected by one party under an agreement that when the adjacent owner makes use of it he shall pay half the cost, it shall become a party wall, it is not such until the condition is complied with; and if, at any time before it is so used, the other adjacent owner is damaged by its fall, or from any defect therein or negligence in its use damages ensue, the person erecting it is liable for all such resulting damage." To the same effect are *Glover* v. *Mersman*, 4 Mo. App. 90, and *Gettwerth* v. *Hedden*, 30 La. Ann. 130.

York had notice of the dangerous condition of the wall, and had been requested to secure it by the plaintiff and the city officials. It was therefore error in the trial court to instruct the jury to find for the defendant York.

From the evidence in this record we do not find any such contract between the defendants York and Campbell as would create a liability in favor of plaintiff against the defendant Campbell. There was no error in the trial court instructing the jury to find the defendant Campbell not guilty.

It was error for the Appellate Court for the First District to affirm the judgment of the circuit court of Cook county, and the judgments of the Appellate Court for the First District and of the circuit court of Cook county are each reversed and the cause is remanded.

*Reversed and remanded.*