DAVID BEIDLER *et al.*

*v.*

EMILY A. KING.

*Opinion filed April 20, 1904.*

1. PARTY WALLS—*agreement for repairs construed.* A provision in a party-wall agreement that if repairs are necessary after the party of the second part has used or paid for her portion of the wall the cost shall be borne equally by the parties "to the extent that they are each using the said wall," imposes no obligation on the second party to repair any portion not used or paid for by her.

2. SAME—*what does not deprive owner of party wall of his interest in other party's land.* Partial destruction and weakening, by fire, of a party wall built partly on land of an adjoining owner under a party-wall agreement does not divest the builder of his interest in the land of such adjoining owner, so as to make the latter the sole owner of the portion of the wall standing on her land and liable for the consequences of its dangerous condition.

3. SAME—*owner of party wall liable for negligence in allowing it to fall.* The owner of a party wall who negligently permits it to stand after the inside of his building is destroyed by fire is liable to an adjoining owner who has paid for and is using a portion of the wall, for

damages resulting to the latter from subsequent falling of other portions of the wall which she has not paid for and is not using.

4. SAME—*adjoining owner may assume that owner of wall will heed notice as to its condition.* An adjoining owner who has notified the owner of the dangerous condition of the standing walls of a building the inner portion of which has been destroyed by fire, is not, as a matter of law, guilty of contributory negligence in not taking steps to prevent the walls from falling, but may assume the owner will heed the notice.

5. INSTRUCTIONS—*when giving instruction stating abstract rule of law will not reverse.* Giving an instruction stating a correct abstract proposition of law is not ground for reversal unless it appears to the court that it tended to mislead the jury.

6. SAME—*instructions must be considered as a series.* Instructions must be considered as a series, and the fact that an element is lacking in one instruction is not ground for reversal if the lacking element is supplied by other instructions.

*Beidler* v. *King*, 108 Ill. App. 23, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. FRANK BAKER, Judge, presiding.

On August 24, 1887, Emily A. King, being the owner of the east half of lot eight (8), in block seventy (70), in the original town (now city) of Chicago, and Jacob Beidler, being the owner of the west half of said lot 8, entered into an agreement, which, after reciting the desire of the parties that a party wall of sufficient thickness for a six-story brick building should be erected, the center line of which should be located on the west line of the east two and one-half feet of the west half of said lot, which two and one-half feet the said Emily A. King agrees to purchase from the said Beidler for the sum of $1000, proceeds as follows: "Now, therefore, this indenture witnesseth, and it is hereby mutually covenanted and agreed by and between the parties hereto, in consideration of the premises, that the said party of the first part (Jacob Beidler) may so build and erect a party wall of such thickness and in accordance with plans already

prepared by architect, and in accordance with the ordinances of the city of Chicago, to make and constitute the east wall of such building as he may decide to erect, so that the center line of such party wall shall and may be located on the west line of the east two and one-half ($2\frac{1}{2}$) feet of the west half of said lot eight (8). And this indenture witnesseth further, and the said party of the first part does hereby covenant and promise and agree, that the said party of the second part, (Emily A. King,) her heirs, administrators and assigns, shall and may at all times hereafter have the full and free right and privilege of joining to and using the said party wall above mentioned, as well below and above the surface of the ground, and along the whole length or any part of the length thereof, any building which she or they, or any of them, may desire or have occasion to erect on the said lot so owned by the said party of the second part, and to sink the joists of such building or buildings into the said party wall to the depth not exceeding four (4) inches. Provided always, nevertheless, and on the express condition, that the said party of the second part, her heirs, administrators, executors or assigns, as aforesaid, before proceeding to join any building to the said party wall, or to any part thereof, and before making use thereof or breaking or cutting into the same, shall pay unto the said party of the first part, his heirs or assigns, the full moiety or one-half part of the full value of the whole of said party wall if used, or of such portion thereof as shall be used as a party wall by said party of the second part, which value shall be the cost price at the time when such party wall is to be used by said party of the second part, as fixed, estimated and determined by two competent, disinterested builders of said city of Chicago, one of whom shall be chosen by the party of the first part, or his heirs, executors, administrators and assigns, and one of whom shall be chosen by the said party of the second part, or her heirs, executors,

administrators or assigns. * * * And the parties hereto further covenant and agree that if it shall become necessary to repair or re-build any portion of said party wall or walls before the said party of the second part shall use or pay for her portion of the same, the expense or cost of such repairing or re-building shall be borne by the said first party; and further, if it shall become necessary to so repair or re-build after the said party of the second part shall have used or paid for her portion of said wall, then and in that event the cost of such repairing or re-building shall be borne equally by the parties hereto, to the extent that they are each using said wall. It is further mutually covenanted and agreed by and between the parties hereto that this agreement shall be perpetual and at all times be construed as a covenant running with the land."

On the same date Jacob Beidler deeded to Emily A. King the east two and one-half feet of said lot 8, and thereafter erected a wall, in pursuance of said contract, one hundred and eighty-three feet long and ninety-four feet high, which constituted the east wall of a double factory building, ninety feet wide by one hundred and eighty feet long, and six stories high. Appellee erected a two-story and basement brick barn upon her lot, using a part of the party wall as the west wall of the barn. This barn was erected by first building a small portion and then adding to it from time to time, up to 1895. As additions were made she acquired from Jacob Beidler such portions of the party wall as she needed, paying therefor in the manner provided by the contract. At the time of the fire hereinafter mentioned, she had paid for and was using the party wall for a distance of one hundred and nineteen feet, measured south from the north end of the party wall, and thirty-eight feet in height. After the erection of the Beidler building Jacob Beidler died, leaving appellants as his only heirs. On October 17, 1899, at 12:40 A. M., the east half of the double build-

209—20

ing erected by Jacob Beidler was destroyed by fire. The east wall or party wall was left standing but was badly damaged. On the same day that the fire occurred appellee sent a notice to appellants informing them that the wall was in a dangerous condition and liable to fall on her property at any time, and notifying them to protect the same at once. On the following day the commissioner of buildings of the city of Chicago served a notice of like import upon appellants. On October 20, 1899, appellants contracted with one Benson to take down this wall, and about four o'clock in the afternoon of the latter date three men were started on this work. The force of men was subsequently increased, on later days, to six or seven, and then to nine or ten, and finally to twelve or fifteen. On October 28, 1899, the wall fell to the east upon the building of appellee, entirely demolishing that building. The evidence tends to show that from the time of the fire this wall was bulged out, the greater projection being in the third story, from the bottom and about midway of the wall from north to south; that on the morning after the fire the top of the wall was but little, if any, out of alignment, and the bulge did not extend below the third story, but as time passed the wall inclined more and more to the east until it fell; that there was a crack in the wall commencing at the top of the north end of the wall and extending diagonally toward the south to the bottom of the wall at its south end. The evidence also tends to show that with a sufficient force of men the wall could have been taken down in four or five days; that the wall was not tied or braced in any manner after the fire, and that a larger number of men could have been worked at tearing it down than were employed at that work at any time. When it fell, only about a story and a half of the wall had been removed.

On January 24, 1901, appellee commenced an action on the case for the recovery of damages to her property

occasioned by the falling of this wall, making the owners of the property defendants to the suit. A trial before a jury resulted in a verdict for $7778.40 for appellee, upon which the court rendered judgment, after overruling a motion for a new trial. Appellants appealed to the Appellate Court for the First District, where the judgment of the circuit court was affirmed. This appeal is from the judgment of the Appellate Court.

Appellants presented a peremptory instruction to the court to be given to the jury, both at the close of the plaintiff's evidence and again at the close of all the evidence. The court refused to give the instruction in each instance.

Appellants complain of the action of the circuit court in giving instructions numbered 11, 12, 13, 14, 15 and 18 for the plaintiff, and in giving one instruction at its own instance. They also complain of the refusal to give the peremptory instructions requested by them, and of the refusal to give instructions numbered 6 and 7 offered by appellants.

WILLIAM J. LACEY, for appellants.

ARTHUR HUMPHREY, (THOMAS BATES, of counsel,) for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The principal controversy in this case is determined by a construction of the party-wall contract. Appellants' position is, that after appellee had paid for and used a portion of the party wall she was then liable, under that contract, for a portion of the repairs to the entire wall, and that, it being her duty to assist in keeping the entire wall in repair, she cannot recover damages resulting from a failure to repair the party wall. The language of the contract in reference to repairs is as follows: "And the parties hereto further covenant and

agree, that if it shall become necessary to repair or re-build any portion of said party wall or walls before said party of the second part shall use or pay for her portion of the same, the expense or cost of such repairing or re-building shall be borne by the said first party; and further, if it shall become necessary to so repair or re-build after the said party of the second part shall have used or paid for her portion of said wall, then and in that event the cost of such repairing or re-building shall be borne equally by the parties hereto, to the extent that they are each using said wall."

Under the above contract it is said that appellee was bound to pay her share of any repairs to any portion of said party wall in the proportion which the part of the wall that she had paid for bears to the entire wall; that is, if she was using the north one-half of the wall or had paid one-half of the cost thereof, she would then have paid for and would have been the owner of the one-fourth part of the entire wall, and if the south half of the wall needed repairs she would be liable for one-fourth of the expense thereof, even though she owned no part of that half of the wall. The intention of the parties was that she should pay for this wall and use the same in such portions thereof as she might elect from time to time, and we think the contract simply means that she should be liable for repairs to that portion of the wall for the one-half of which she had paid. The language is, "the cost of which repairing or re-building shall be borne equally by the parties hereto, to the extent that they are each using said wall." This means that each shall pay one-half of the cost of the repairs to that portion of the wall which is being used by both; that throughout that extent of the wall which was used by each, each should bear one-half of the expense of repairing or re-building. The preceding language plainly shows that Beidler was to pay all the necessary expenses of repairing or re-building that portion of the wall which appellee

had not used and to the cost of which she had contributed nothing.

In *Mickel* v. *York*, 175 Ill. 62, this court said (p. 70): "The contract in this case expressly provides that plaintiff, before making any use of or joining any building to the wall, shall pay or secure to the defendant York the full moiety or one-half part of the value of the said party wall, or so much thereof as shall be joined thereto or used, which value shall be the cost price at the time when such wall is to be used. The contract expressly provides, further, that York shall build that wall. By the terms of that contract York retained the ownership of what he had placed upon the plaintiff's land until he should be paid for it, and he had a right to have it supported on the land of plaintiff under this contract. The wall having been built on the plaintiff's land under this agreement, which amounts to a license with an interest, is not thereby incorporated and lost in the land or lot, but remains a separate property, still belonging to the builder until he is paid therefor. York, therefore, was the owner of this wall, and was liable for any and all damage for failing to maintain it in a safe condition."

In the case at bar appellants were the sole owners of the entire wall, except that part thereof which was being used by appellee, and the rights and liabilities of the parties were the same with respect to that portion of the wall of which appellants were the sole owners as they would have been with reference to the entire wall had appellee neither purchased nor used any part thereof. The cases referred to by appellants, of the class of *City of Peoria* v. *Simpson*, 110 Ill. 294, holding that where the same duty rested upon two parties to make repairs both may be said to be guilty of negligence if the repairs be not made, are not in point.

It is then urged that as this contract does not expressly provide for re-building the "whole" of this wall it cannot be re-built under this party-wall contract, and

that upon its usefulness as a party wall being destroyed by the fire, it was as though the wall itself was absolutely and entirely destroyed, and appellee became the owner of that portion thereof which stood on her land, and that consequently the injury resulted from her failure to care for her own property. It is unnecessary here to determine whether the wall can be re-built under this contract as a party wall.

The contract contains this language: "Provided always, nevertheless, and on the express condition, that the said party of the second part, her heirs, administrators, executors or assigns, as aforesaid, before proceeding to join any building to the said party wall, or to any part thereof, and before making use thereof or breaking or cutting into the same, shall pay unto the said party of the first part, his heirs or assigns, the full moiety or one-half part of the full value of the whole of said party wall if used, or of such portion thereof as shall be used as a party wall by said party of the second part, which value shall be the cost price at the time when such party wall is to be used by said party of the second part." We think this language applicable to this wall so long as it stood, and that the owner of the wall would not be deprived of his title to that portion thereof which stood on the ground of appellee merely by the fact that the wall had become so weakened by the fire as to be no longer fit for the purpose for which it was originally built.

So construing this contract, we come now to a consideration of the error assigned upon the refusal of the court to instruct the jury to find for the defendants at the close of all the testimony. In support thereof it is said that there is no evidence of negligence on the part of the defendants, and that there is no testimony showing the exercise of due care by the plaintiff. .

The general rule is, that where a fire has occurred in a building, destroying the inner portion of the building and leaving the walls, if the owner negligently permits

the walls to remain standing and they thereafter fall, the owner of the wall is liable to the adjacent owner for the resulting damage. 1 Wood on Law of Nuisances, sec. 225; *Schwartz* v. *Gilmore*, 45 Ill. 455; *Mickel* v. *York, supra.*

In this case the attention of appellants was called to the condition of this wall immediately after the fire, on the morning of October 17, 1899. They did not begin the work of taking down the wall until the evening of October 20, 1899, and then only with a force of three men, when a force greater in number than fifteen could have been used in the work. The evidence is that the wall could have been taken down in from four to five days with a sufficient force of workmen,—that is, with as many men as could have worked thereon. · It also appears that after the work of taking down the wall began, it was suspended one day under the direction of the fire department of the city of Chicago. It fell on the 28th. It is apparent that if a force of men in proper numbers had been put to work on the wall at the earliest possible moment, it would have been entirely removed before the day on which it fell. The longer the wall stood the greater was its inclination to the east. Had a stronger force been at work earlier, the upper portion of the wall would have been sooner removed, and the tendency of the wall to lean to the east would thereby have been lessened. Some evidence was offered tending to show the difficulty about securing men to work on this wall on account of the danger of its falling. This evidence does not show such an effort to secure the necessary men to take down this wall as the emergency required of men of ordinary prudence. A small force was kept continually at work, except on the day when they were interfered with by the fire department. We are not able to say from the evidence, as a matter of law, that by the exercise of measures such as a reasonably prudent man would have used, men sufficient in number to take the wall down at the earliest possible moment could not have been obtained.

The evidence tended to show negligence on the part of appellants.

It is then urged that inasmuch as appellee took no steps herself to prevent the wall falling, beyond notifying appellants of its dangerous condition and demanding that they remove it, she was guilty of contributory negligence. Laying aside for the moment the question of her right to do anything with the wall, we think she was entitled to assume that the appellants, whose attention had been called to the condition of the wall, would perform their duty in respect thereto, and we cannot therefore hold, as a matter of law, that she was guilty of contributory negligence.

The peremptory instruction was properly refused.

The eleventh instruction given on the part of appellee is an abstract proposition of law. By it the jury are informed that until Emily A. King exercised her right to pay for and use some portion of the wall, Jacob Beidler and his heirs were the owners and had exclusive control thereof, and that she had no right, title or interest in the said wall, or any part thereof. This instruction might better have been made to apply alone to that part of the wall to the cost of which she had not contributed and which she was not using. This instruction, however, is an accurate statement of the law, and while it might properly have been refused, we do not think it could have misled the jury, and unless it appears to the court that such instructions tend to mislead the jury, the judgment will not be reversed on account of the giving thereof. *Healy* v. *People,* 163 Ill. 372.

Appellee's eighteenth instruction was to the effect that if defendants' portion of the wall, as a result of their negligence, fell and pulled over a portion of the wall which plaintiff had paid for and was using, which portion last mentioned would not otherwise have fallen, she may recover the entire amount of damages sustained by her, resulting from the fall of the entire portion of the

wall which fell upon her premises. It is said that this instruction ignores the fact that Mrs. King's part of the wall may have been weak, defective and out of plumb and may have contributed to the fall. We do not think it objectionable on this account, as it plainly appears from the evidence that the portion of her wall which came down in the catastrophe was carried to the east, prior to the fall, by the progress of the wall above it in that direction.

Instructions numbered 12, 13 and 14, and one given by the court of its own motion, are all criticised for the same reasons. No. 13 is in the following language:

"The court instructs the jury that as a matter of law the plaintiff had no right to go on or touch the portion of said east wall of said building not paid for by her, for the purpose of preventing the same from falling, or for any other purpose."

The first and second objections to these instructions are disposed of by what we have already said. The third is, that appellee had the right to enter upon the premises, if necessary, and also upon any part of the wall, for the purpose of bracing the wall to prevent the same from falling upon her property. We are referred in this connection to the case of *Field* v. *Leiter*, 118 Ill. 17. That case deals with the right of entry for the purpose of re-inforcing a party wall under the contract then before the court, and the contract there is held to give one party the right of entry upon the premises of the other for the purpose of strengthening the foundation of the wall. No such provision is found in the contract in the case at bar. The portion of the wall to which these four instructions applied was the sole property of appellants. The contract gave to appellee no right to use or deal with the wall, or any portion thereof, in any manner, until she should have paid one-half the cost thereof. These instructions were correct.

Appellants rely upon the case of *Insurance Co.* v. *Werlein*, 42 La. Ann. 1046. That case, however, turns upon

certain provisions contained in the Louisiana code which are not found in our statute, and the case is therefore of no assistance in determining this question.

The objection urged to instruction No. 15 is, that it advised the jury that Mrs. King was entitled to recover if the wall fell through the negligence of the defendants, and omitted the qualification that it must appear that she was in the exercise of due care. This question does not arise upon this instruction, which is to the effect that the fact that Emily A. King paid for and used a portion of the east wall does not bar a recovery for damages occasioned by the fall of another portion of that wall resulting from negligence on the part of the defendants. This objection is also made to instruction No. 18, which we have heretofore considered in regard to a different complaint made to the action of the court in giving the same.

In the instruction given by the court of its own motion, in which all the elements which must be found by the jury to warrant a verdict in favor of the plaintiff are stated, they are told that to warrant a recovery they must "find that the plaintiff was without fault," and in an instruction given on the part of the defendants is this language: "And if the jury believe, from the evidence, that the plaintiff was guilty of negligence contributing to the injury, then the plaintiff cannot recover and the jury should find for the defendants." It is a familiar rule that the instructions must be considered as a series. In considering the same objection which is now made, this court, in *Wenona Coal Co.* v. *Holmquist,* 152 Ill. 581, said (p. 591): "*Third,* error in the instructions given for the plaintiff is complained of. The first instruction is objected to upon the ground that it does not require the exercise of ordinary care by the plaintiff. This is true if the instruction is considered by itself, but all the instructions, both those given for the plaintiff and those given for the defendant, must be considered together as

one charge. Upon examining the instructions given for the defendant, we find that five of them, distinctly and in express terms, say to the jury that the plaintiff can not recover unless he shows that at the time of the injury he was in the exercise of ordinary care. Plaintiff's first instruction, although unnecessarily announcing the now obsolete doctrine of comparative negligence, is not inconsistent with the five instructions of the defendant, which require the exercise of ordinary care as a condition to the right of recovery, and when it is read in connection with such instruction it could not have misled the jury. This view is sustained by the following decisions of this court: *Willard* v. *Swansen,* 126 Ill. 381; *Chicago, Burlington and Quincy Railroad Co.* v. *Warner,* 123 id. 38; *Village of Mansfield* v. *Moore,* 124 id. 133; *Calumet Iron and Steel Co.* v. *Martin,* 115 id. 358; *Chicago, Burlington and Quincy Railroad Co.* v. *Johnson,* 103 id. 512; *Chicago and Alton Railroad Co.* v. *Johnson,* 116 id. 206."

No instruction advised the jury that the plaintiff could recover if she was guilty of negligence herself. It is therefore not a case where the instructions are inconsistent with each other, so that the jury could not tell which instruction to follow, but it is a case where an element lacking in one instruction is supplied by another, and the exception is therefore not well taken.

Instructions numbered 6 and 7, asked by the defendants, were refused. Each would have advised the jury that if the plaintiff had knowledge of the dangerous and unsafe condition of the wall, and could at a moderate expense have prevented its fall, it was her duty to have incurred this expense. What we have already said in discussing instruction No. 13 given on the part of the plaintiff disposes of the errors assigned upon the refusal of these instructions 6 and 7.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*