ABRAHAM KUH et al. Plaintiffs in Error, vs. EUGENE
O'REILLY, JR., et al. Defendants in Error.

*Opinion filed December 17, 1913—Rehearing denied Feb. 4, 1914.*

1. PARTY WALLS—*when party wall agreement contemplates a
solid wall.* A party wall agreement which provides for the con-
struction of a wall between the lots of the first and second par-
ties, which "shall be and remain a party wall" and "shall extend
throughout the whole distance of said dividing lines," and which
authorizes the second party to join to and use the wall, or any
part of it, upon paying one-half the value of the part so used, will
be held to contemplate a solid wall, without openings, for the en-
tire height of the wall, particularly where the wall was so con-
structed originally and so remained for several years.

2. SAME—*rights of first party up to time second party desires
to use wall.* If a party wall erected under an agreement authoriz-
ing the second party to join to and use the wall, or part of it, upon
paying one-half of the value of the part so used is wholly paid for
by the first party, the latter, until the second party elects to use
the wall, is the sole owner of the wall, with the right to have one-
half of it stand upon the other's land;' but such ownership does
not carry with it the right to violate the agreement by cutting
openings in the wall and maintaining them until such time as the
second party elects to use the wall and makes his payment in ac-
cordance with the contract.

3. SAME—*when second party must pay interest from time he
began to use wall.* If the portion of the party wall desired to be
used by the second party is a solid wall, as required by the con-
tract, and the openings and projections which the first party has
wrongfully caused to be made do not interfere with the second
party's use of the portion of the wall he needs for his building,
the second party, upon making use 'of the wall, becomes liable,
under his written contract, for the amount due, with legal interest
from that time, notwithstanding he is entitled to have the open-
ings closed and the projections removed, and relies, in good faith,
upon that right as a defense to the suit to enforce payment.

WRIT OF ERROR to the Appellate Court for the First
District;—heard in that court on appeal from the Superior
Court of Cook county; the Hon. WILLARD M. McEWEN,
Judge, presiding.

Rosenthal & Hamill, (Lessing Rosenthal, and Leo F. Wormser, of counsel,) for plaintiffs in error.

M. J. Dunne, for defendants in error.

Mr. Justice Farmer delivered the opinion of the court:

This case comes to this court by writ of *certiorari* to review a judgment of the Appellate Court for the First District, reversing, in part, a decree of the superior court of Cook county and remanding the cause to that court, with directions.

Plaintiffs in error (hereafter called complainants) filed their bill in chancery in the superior court of Cook county to enforce the provisions of a certain party wall contract. At the time of making said party wall contract complainants and Eugene O'Reilly owned adjoining parcels of land in the city of Chicago. Defendants in error (hereafter called defendants) have succeeded to the title of Eugene O'Reilly to the lot or parcel of land owned by him at the time said contract was made. Defendants' land was at the north-west corner of the intersection of VanBuren and Franklin streets and faced one hundred feet on VanBuren and fifty feet on Franklin streets. Complainants owned the land adjoining defendants' lot on the north and west. On March 3, 1892, the then owners of the lots entered into a written agreement, the material parts of which are as follows:

"*First*—That the walls of said building facing the premises of said second party on the north and west ends of said east one hundred (100) feet of said lot one (1) shall be and remain a party wall, and shall be built upon the dividing line between the said premises of the said parties, and shall be of brick, with stone and metal and concrete foundations, * * * and said wall shall stand equally upon their respective parcels of land, * * * and

said wall shall extend throughout the whole distance of said dividing lines.

"*Second*—Said second party may join to and use said wall, or any part thereof, at any time after the same shall have been built, by first causing said wall to be of proper strength and thickness to sustain the weight which he intends that the same shall bear, and further by complying with the other provisions and covenants herein contained.

"*Fourth*—In case said party wall, original, extended or restored, shall be totally or partially destroyed, or should it be necessary to repair the same or any portion thereof, either party hereto may repair or rebuild the same, and the expense of rebuilding or repairing shall be borne equally by the parties hereto, their heirs or assigns, as to so much of said wall as they may be using in common. * * *

"*Sixth*—Whenever said second party intends to join to and use said wall, original or restored, as hereinbefore provided, or whenever thereafter either of the said parties shall use any addition to said wall built by the other party, the one so using shall first pay to the other party, or those claiming under him or them, owners for the time being of the land of the party who built such wall or addition, one-half of the value, at that time, of so much of said wall or of such addition, including the foundations under the same, as he or they may use, and in computing the value of said wall or any addition thereto, the service of architects, and labor expended and performed in respect thereof, shall be taken account of and considered."

Within a year after the making of said contract complainants erected on their south and east lines, dividing their and defendants' property, a wall seven stories high, which was part of a seven-story building erected upon complainants' lot. The wall erected on said division lines was a substantial, solid wall throughout its length and height and was constructed according to the terms of the agreement. In 1901 complainants, over the protest and objections of

defendants, cut six large openings through the wall, placed large windows therein, and attached to the side of the wall, over defendants' premises, hinges, upon which they placed iron window shutters, which extended and swung over defendants' premises. Complainants also made an opening in the wall and placed therein a large steam exhaust pipe, which projected one and one-half or two feet over defendants' premises, from which steam and vapor were expelled. Complainants also placed anchor rods through said wall, with heads about sixteen inches in diameter and extending some four inches over the premises of defendants. Defendants afterward, being desirous of using a part of the party wall as a part of a building they proposed to construct upon their lot, notified complainants to remove the anchor rods, steam pipe, window shutters and hinges and to close the window openings and reconstruct the wall as it was originally constructed. Defendants also notified the complainants of their intention to erect a building on their lot, and that unless complainants restored the wall to its original condition defendants would use part of it as a part of their structure without paying one-half the value of the part so used. Complainants did not comply with this demand of defendants, and shortly thereafter defendants began the construction of a four-story building, and in so doing used so much of the party wall as was necessary but refused to pay complainants anything for the part so used, and thereupon complainants brought this suit.

The bill, after setting out the ownership of the premises, the party wall agreement and the construction of the wall by complainants, alleged that defendants were violating the agreement by using a part of the wall without paying for it. The bill prayed that the defendants be decreed to pay one-half the value of the part of the wall used and proposed to be used by them; that the amount, when ascertained, be decreed to be a lien upon defendants' premises, and that defendants be enjoined from using the wall

without paying one-half the value of the part used by them. Defendants answered the bill, admitting the agreement but alleging the wall was not a solid wall, as required by the agreement, but contained a number of windows and openings over defendants' premises, which prevented the wall from being a party wall, and further set up the placing of the anchor rods through the wall with heads projecting four inches over the premises of defendants, also that a steam exhaust pipe projected about two feet over the said premises, from which were emitted steam and vapor, making loud and disagreeable noises. The answer further averred that by reason of the openings in the wall defendants' premises were exposed to great danger of fire from complainants' building; that said openings prevented said wall from being a party wall; that complainants were trespassers and had no right to contribution for any part of the value of the said wall; that papers and rubbish were thrown out from complainants' building over and upon the roof of defendants' building, and that defendants were entitled to compensation for damages by reason of the matters set up in the answer. Defendants also filed a cross-bill, praying that complainants in the original bill be enjoined from interfering with the use of the wall by defendants, and that complainants be ordered and decreed to make the wall solid by closing all openings therein adjoining and overlooking defendants' premises and that they be ordered to remove the projections that encroached upon defendants' premises. Complainants answered the cross-bill and the cause was heard before the chancellor. The decree found that the wall stood equally upon the land belonging to complainants and defendants; that several years after it was built complainants cut six openings through the wall for windows, without the consent and against the objections of defendants; that said windows were more than fifteen feet above that part of the wall used by defendants and did not interfere with the construction of

their building. The decree found that the window sills, iron window shutters, steam pipe, iron bolts and heads projecting from the wall over and upon the premises of defendants constituted trespasses that should be removed by complainants, but that defendants were not entitled to any other relief under their cross-bill. The decree ordered defendants to pay complainants $5034.48, which the chancellor found to be the value of one-half of that part of the wall used by defendants, together with $2208.21 interest, that being five per cent per annum on the amount found due complainants from the 20th day of June, 1901, within twenty days, and that in default of payment the premises of defendants be sold to satisfy said sum. Defendants prosecuted an appeal to the Appellate Court, and that court held that the superior court erred in refusing to grant the prayer of the cross-bill that complainants be required to fill the openings in the wall where the windows were placed and restore the wall to its original condition by making it a solid wall throughout its entire length and height, and in allowing interest upon the amount fixed as the value of that part of the wall used by defendants. That part of the decree of the superior court finding the value of that part of the wall used by defendants to be $5034.48, and that defendants were liable to complainants in that sum, was affirmed. The decree was therefore reversed in part and remanded, with directions to the superior court to grant the prayer of the cross-bill that the window openings be filled and the wall restored to its original condition, and upon it being made satisfactorily to appear that had been done, that defendants be decreed to pay complainants $5034.48, and that the same be made a lien upon defendants' premises.

There is no substantial controversy about the facts. The chancellor found that the wall was originally built in substantial conformity to the written agreement, and that finding was approved by the Appellate Court. As origi-

nally constructed the wall was a solid wall throughout its
length and height and stood one-half on complainants' and
one-half on defendants' premises. It was maintained in
that condition seven or eight years before the window
openings were made in it and the projections placed on
the wall. Previous to those changes defendants had not
used any part of the wall by the erection of a building
on their premises. Upon learning that complainants were
making openings in the wall defendants notified them to
desist and demanded that they restore the wall to its origi-
nal condition, but complainants continued until they had
completed the openings and placed windows therein and
hung shutters on the outside of the wall. Afterward they
made another opening, from which a steam exhaust pipe
projected. Subsequently defendants notified complainants
of their intention to erect a building and use a part of the
party wall in doing so, and that because of the violation
of the party wall agreement and the invasion of defend-
ants' rights defendants had sustained damages, and that by
refusing to restore the wall to its original condition com-
plainants had forfeited their right to contribution from
defendants for any part of the wall. Thereafter defend-
ants erected a building four stories high, using the party
wall to that extent in doing so. The windows made by
complainants in the wall were in the sixth and seventh
stories, and were therefore above the roof of defendants'
building.

Complainants contend that the contract does not ex-
pressly require the wall to be a solid wall throughout its
entire length and height, and that no such intention of the
parties can be fairly implied from the terms of the agree-
ment. The first clause of the agreement provides that the
wall shall be built on the dividing line between said prem-
ises, and "shall be and remain a party wall" and "shall ex-
tend throughout the whole distance of said dividing lines."
The second clause authorizes defendants to join to and use

the wall, or any part of it, by complying with the provisions of the agreement. The sixth clause authorizes defendants to join to and use said wall upon first paying to complainants one-half of the value, at that time, of so much of said wall as they may use. Considering the language of the agreement in connection with the purposes for which it was executed, it seems to us to indicate the wall was to be solid throughout its length and height. It is true it was built and the cost of it paid by complainants. At that time the owner of defendants' property was not intending to build upon it in the near future, but to secure to himself, or to those who succeeded him in title, the privilege of joining to the wall at any time thereafter when it should be decided to erect a building on his lot, he gave complainants permission to place one-half the wall on his property. The wall was built for the purpose of being used as a party wall between the premises of the respective parties and was "to be and remain a party wall." Complainants insist that the phrase quoted does not mean the wall shall be and remain a party wall throughout its entire height, but means only such part of it as the parties may be using in common. The agreement gave the owner of defendants' premises the right to use the entire wall by joining to it if he so desired. There was nothing in the instrument to indicate that the owner of defendants' property contemplated or intended using only a part of the wall when he should decide to erect a building on his property. The agreement secured to him the right to use it all by joining a building to it, and the agreement was that the entire wall shall be and remain a party wall, and not that such portion of it shall be a party wall as defendants might elect to use. In the absence of any provision in the agreement that complainants should have the right to construct and maintain windows in the wall until such time as defendants desire to use it, we think no such construction can be placed upon the instrument. The agreement

required that the wall be and remain a party wall, and in the absence of some provision to the contrary its terms will not admit of the construction that it was not intended it should be a solid wall throughout. It seems clear the parties themselves so understood the agreement when the wall was built, for it was built as a solid wall according to plans and specifications and was so maintained for several years.

It is further contended that as complainants built and paid for the wall they were the sole owners of it until such time as defendants made payment for it in accordance with the agreement, and until that time it was not strictly a party wall and complainants were not required to treat it as such. It was held in *Mickel* v. *York,* 175 Ill. 62, that when a party wall is constructed by one lot owner between adjacent lots, resting partly on each, under an agreement with the other to pay one-half the value of it when he elects to use it, the builder is the absolute owner of the wall with the right to have one-half of it stand upon the land of the other. If the adjoining owner elects to pay one-half the value of the wall and use it, he becomes the owner of the half standing on his land with an easement in the half standing on the lot of the one who built the wall. *Beidler* v. *King,* 209 Ill. 302, states the same rule and cites and quotes from *Mickel* v. *York, supra.* But does it follow that because of such ownership complainants had the right to make such openings in the wall as they pleased until payment was made by defendants? We think the answer must be in the negative, for, as we understand and construe the agreement, complainants were obligated to build and maintain a solid wall. The right to violate the agreement did not attend such ownership of the wall. It is necessary, therefore, in the decision of this case to determine how, if at all, the unauthorized acts of complainants in making the windows in the wall and in placing projections over and upon defendants' lot affected the rights

of the parties, and also whether the defendants are entitled to the relief prayed in their cross-bill or any part thereof.

The Appellate Court affirmed that part of the decree of the superior court finding defendants liable to complainants for one-half the value of that part of the party wall used by defendants but held they were not liable for interest on the amount found due. The Appellate Court also held that defendants were entitled to the relief prayed under their cross-bill. No cross-errors have been assigned by defendants, and while they assert in their brief that they were wrongfully adjudged liable for the value of one-half of the wall used, under the state of the record before us they are to be deemed as admitting the correctness of the judgments of the superior court and Appellate Court that when they joined to and used the wall they became liable to complainants in the sum of $5034.48 under the agreement. They insist, however, that they are not liable for interest on that amount, and say they should not be penalized by being required to pay interest because they in good faith defended against any liability on account of the use made by them of a portion of the party wall.

The three lowest windows in the party wall were in the second story above the roof of defendants' building and the other three were one story higher. They were wrongfully placed and maintained there, as were also the projections, but they did not prevent or directly interfere with defendants using all that portion of the party wall they desired then to use. While complainants had no right to make the windows in the wall or to extend projections beyond it, their doing so did not authorize defendants to use the part of the wall where there were no windows or projections without paying for it. In our judgment they had a remedy against complainants for their wrongful acts, but such wrongful acts of complainants did not absolve defendants from the obligation to pay for the part of the wall they used. The liability of defendants was one aris-

ing upon a written contract, and became due when they proceeded to join their building to the party wall. Under the second section of our statute on interest creditors are entitled to interest at five per cent upon money after it becomes due under any instrument of writing. The money became due under an instrument of writing, and complainants were entitled to interest unless it is shown they have done some act which upon equitable considerations should be held a bar to or forfeiture of the right to interest. We are of the opinion that no such considerations arise in this case. The wall was built in substantial compliance with the agreement, and all that part of the wall in use by defendants is in the same condition as when originally constructed. Defendants, as hereafter stated, have a right to require the portion of the wall where the changes have been made to be restored to its original condition, but as the changes made in part of the wall not used by defendants do not materially interfere with the use of the part they have elected to use, it appears to us that, disregarding the statute to which we have referred, it would be contrary to the rules of equity to say they could refuse payment and not become liable for interest. In *Keady* v. *White,* 168 Ill. 76, it was said: "Interest, in equity, is allowed because of equitable considerations, and it gives or withholds interest as, under all the circumstances of the case, it deems equitable and just." *Warner* v. *Rogers,* 23 Minn. 34, is in its essential features much like this case, and it was held using the wall rendered the party so using it liable from the time of joining to it. It would probably not be contended that if no changes had been made in any part of the wall defendants could have used it and not become liable for interest if they refused to make the payment required by the party wall agreement. The evidence affords no basis for recoupment on account of damages sustained by defendants, and we think they must be held liable for interest.

*Phillips* v. *South Park Comrs.* 119 Ill. 626; *Keeler* v. *Herr,* 157 id. 57.

We are of opinion the Appellate Court correctly held defendants were entitled, under the cross-bill, to a decree requiring the removal of the projections, the closing of the openings in the wall, and its restoration to its original condition as a solid wall throughout its length and height. While the wall was constructed by complainants and defendants were not required by the agreement to pay any part of the cost until they desired to use it, as we have before stated it was built for a party wall and under the agreement was required to be maintained as a solid wall. The owner of defendants' premises gave one-half of the land upon which the wall was built for the privilege of joining to it when he should desire to do so, by paying one-half the value of the wall used. He and defendants, as his successors in title, have a right to require performance of and compliance with that agreement.

That defendants have the right to require the restoration of the wall to its original condition is supported by the case of *Springer* v. *Darlington,* 207 Ill. 238. In that case a party wall had been destroyed by fire and was rebuilt by Springer with a large number of openings in it. Darlington, who was not using the newly-built wall, filed a bill praying that the openings in the wall be declared a nuisance and that Springer be enjoined from maintaining them. The agreement under which the original party wall was built, so far as requiring it to be a solid wall is concerned, is similar to the agreement in this case. The trial court held the wall had been re-built by Springer under the party wall agreement; that it should have been a solid wall; that the openings in the wall, and the projecting window caps and sills, were a continuing nuisance to Darlington, and that he had a right to close the openings, remove the projections and make the wall a solid party wall.

That decree was in all respects affirmed by this court. In the opinion the court said it was no answer to the claim of Darlington for the relief prayed, to say he was not entitled to it until he had paid one-half the expense of constructing the wall, for that would be to require him to pay for a structure that was not erected in compliance with the agreement; that it was unimportant what kind of a structure Darlington might want to build on his lot; that he was entitled to have a compliance with the terms of the contract, and Springer could not say he would not comply with it because Darlington did not intend to use his property in a certain way. The court further said Darlington was entitled to have the aid of a court of equity to place the wall in the condition the contract required it should be, and that no other remedy was adequate.

Complainants attempt to distinguish the *Springer case* from this because there the original party wall was paid for by the adjoining owners and in re-building it Springer used a part of the old foundation. We do not think that furnishes any reasonable basis for distinction. The general principles announced in that case upon the question under discussion we believe to be sound, and in the absence of any authority upon the question we would be disposed to hold that defendants have the right to have the wall restored to its original condition. Upon that question the judgment of the Appellate Court was right.

The judgment of the Appellate Court is therefore affirmed in all respects except as to the allowance of interest on the $5034.48 found due from defendants, and that part of the judgment is reversed and the cause remanded to the superior court, with directions to enter a decree in accordance with the views herein expressed.

*Reversed in part and remanded, with directions.*