## Mary E. McChesney, Administratrix, etc., v. Alvin F. Davis, Executor, etc.

1. PARTY WALLS—*When Appurtenant to the Premises.*—Where a party wall is built under a contract, as in this case, the title to the whole wall may be regarded as appurtenant to the lot of the builder, and so passing by every conveyance of it until the severance of the one-half by the payment of the purchase money. The sale of the half of the wall does not occur nor the title to it pass until the payment is made, and so, necessarily, it is constructively a sale by the assignee of so much of the wall. His right to the purchase money is not because he is the assignee

of a covenant running with the land, but because he is the vendor of so much of the wall.

2. SAME—*When Builder is the Owner and Liable for Damages.*—The builder of a wall under a contract here is the owner of such wall until the other party to the contract makes payment therefor, and the builder is liable for damages for failure to maintain it in a safe condition.

3. NOTICE—*To an Agent, Notice to His Principal.*—Notice of a fact affecting the title, to an agent conducting negotiations for the purchase of real estate, is notice to his principal, if the knowledge of the facts is acquired while the agent is acting for his principal.

4. SAME—*Signs of Servitude.*—The fact that a party wall stands upon a lot at the time of its purchase constitutes an apparent sign of servitude, and is sufficient of itself to put a purchaser upon inquiry as to what is the nature of such servitude.

5. PRACTICE—*When the Term of the Presiding Judge Expires.*—It is incumbent upon a party moving for a new trial, the term of the trial judge having expired, to produce to his successor a transcript of the testimony, if necessary for the consideration of the court on the motion for a new trial.

**Assumpsit,** for the value of a party wall. Appeal from the Superior Court of Cook County; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in this court at the March term, 1899. Affirmed. Opinion filed January 4, 1900.

**Statement by the Court.**—Catherine A. Hall and Anna E. Preston, being the owners of lots numbered 8 and 9 in Higgins' subdivision, adjoining each other, on West Madison street, Chicago, on May 10, 1883, entered into a sealed contract which, after designating said Hall as party of the first part and Preston as party of the second part, and reciting the ownership of the property, proceeded as follows :

" And whereas the said party of the first part has already built a party wall, one-half of which stands on the said lot of the said party of the first part, and the other half on the said lot of the said party of the second part, the center of said party wall being on the division line of the said lots hereinbefore mentioned, and whereas it is the intention of the parties to this agreement that said wall shall remain and be used as a party wall upon said lots as aforesaid,

" Now, therefore, this indenture witnesseth, that it is mutually covenanted and agreed by and between the said parties, in consideration of the premises, that the said party of the second part, her heirs and assigns, shall and may at

all times hereafter have the full and free liberty and privilege of joining to and using the said wall above mentioned as well as below and above the surface of the ground as along the whole length or any part of the length thereof, any building which she or they or any of them may desire or have occasion to erect on the said lot of the said party of the second part, and to sink the joists of such building or buildings into the said wall to the depth of one-half thereof and no further; provided, always, nevertheless, and on this express condition, that the said party of the second part, her heirs and assigns as aforesaid, before proceeding to join any building to the said wall and before making any use thereof or breaking into the same, shall pay or secure to be paid unto the said party of the first part, her heirs and assigns aforesaid, the full moiety or one-half part of the value of the said party wall, or as much thereof as shall be joined to or, used as aforesaid, which value shall be the cost price at the time when such wall is to be used by the said party of the second part, her heirs and assigns, as aforesaid."

The contract contains a further provision for extension of the wall by either party, if desired, with liberty to the other of joining to and using such extension upon paying for the same as above provided, and also for the repair or the rebuilding of the wall, the expense of which should be borne equally between them, their respective heirs and assigns; also the further provision, " That this agreement shall be perpetual and at all times be construed as a covenant running with the land."

Said Hall and her husband, by deed dated May 1, 1883, acknowledged May 12, 1883, conveyed said lot 8 to William A. Baldwin, and said Preston thereafter on September 1, 1883, conveyed said lot 9 to Alexander C. McChesney, and said Baldwin and McChesney were the owners of said lots, respectively, on March 19, 1889, when this suit was commenced by Baldwin in assumpsit against said McChesney and Preston. Subsequently both said Baldwin and McChesney died, and the suit proceeded in the name of Davis, executor of the last will of said Baldwin, the appellee herein, against Mary E. McChesney, administratrix of the estate of said McChesney, appellant herein, the papers and all the proceedings in the cause being amended accord-

ingly, and the suit having previously been discontinued as to said Preston.

A trial before the court and a jury resulted in a verdict for appellee, and assessing his damages at $454, on which the court rendered judgment, to be paid in due course of administration, from which this appeal is taken.

The evidence shows that the negotiations leading up to the purchase by Alexander McChesney of lot 9 were conducted by James McChesney, and that during such negotiations the latter was told of the party wall agreement, and that he could ascertain its terms from Mr. Hall, the husband of said Catherine A. Hall, and it was testified that said James McChesney, in response to such statement, replied, "that he knew what the nature of the party wall agreement was." This testimony is not controverted.

Said Alexander McChesney, in the year 1886, constructed buildings on said lot 9, and in so doing used said wall for a support of the floor, ceiling and roof joists of such buildings.

The value of one-half of said wall, when it was so used by McChesney, was $307.19, which, together with interest at five per cent per annum from March 1, 1889, amounts to $454.39. February 28, 1889, demand was made by Baldwin, through his attorney, for one-half the cost of said wall, which the latter declined to pay. This suit was brought to enforce such payment.

At the close of all the evidence appellant asked the court to direct a verdict in her favor, which the court refused. The court then gave to the jury the following instruction:

"The court instructs the jury that notice of the existence of a party wall agreement, given to an agent of a purchaser, operates as a notice to such purchaser, and if the jury believe from the evidence that James McChesney conducted the negotiations for the purchase and conveyance of lot 9, in Higgins' subdivision, etc., one of the lots testified about, for and in behalf of his brother, Alexander McChesney, and with his consent; and if the jury further believe from the evidence that said James McChesney, at the time of the purchase of said lot, had notice, actual or constructive, of the existence of a party wall agreement, then such notice operated as a notice to Alexander McChesney of the existence of such agreement and of the contents thereof, if

by reasonable inquiry he could have learned of its contents."

When appellant's motion for a new trial came on to be heard, the term of Judge Ewing, who tried the cause, had expired, and the motion was heard by Judge Chytraus. The appellee's attorney requested appellant to furnish the court a transcript of the testimony taken in the cause, which was refused, and thereupon, at the request of the court, he presented a transcript of the testimony taken in the cause, and appellant's counsel objected to the use by the court of such transcript on the hearing of the motion, because it was not proven to be correct. Appellee's counsel then produced the stenographers who took the testimony, and offered to prove by them the correctness of the transcript presented. The court said, " I don't think that is necessary," whereupon appellant's counsel, after questioning one of the stenographers as to the correctness of a certain part of the testimony, and appellee's counsel consenting that the transcript might be corrected as to the matter thus inquired about, no further objection thereto was urged. No exception was taken to the action of the court in using the transcript of testimony so presented.

Appellant's counsel also objected to the hearing of said motion, because two pleas which had been filed were not then on file. It appears that these pleas were pleas of the general issue, and counsel for appellant was instructed to prepare substitute pleas in making up the record.

F. W. Becker, attorney for appellant.

Harbert, Curran & Harbert, attorneys for appellee.

Mr. Justice Windes delivered the opinion of the court.

Counsel for appellant argue, first, that the agreement in question was only a personal covenant, and did not run with the land; second, that there was no evidence of the cost price of the wall at the time of its use; third, that Catherine A. Hall had no right to contract with Mrs. Preston; fourth, that the instruction given by the court was

erroneous; fifth, that the discontinuance as to Mrs. Preston was error; and, sixth, that there was irregular practice on the motion for new trial.

As to the first contention of appellant, we are of opinion that it is unnecessary to hold that the covenant in the party wall agreement was such that it ran with the land in order to sustain this judgment. It is true that at the time the wall was built there was no agreement on the part of Mrs. Preston to contribute toward the expense of it, but it does not follow therefrom that the title to such part of it as was on Mrs. Preston's lot vested in her without her consent. The agreement made by her subsequently shows how she regarded the building of the wall partly on her lot. This agreement states, " It is the intention of the parties to this agreement that said wall shall remain and be used as a party wall on said lots;" also that the " party of the second part, her heirs and assigns, shall, and may at all times hereafter, have the full and free liberty and privilege of joining to and using the said wall, etc.," * * * but upon the express condition that before making any use of the wall the second party, her heirs and assigns, should pay one-half part of the value of the wall to Mrs. Hall, her heirs and assigns. These provisions of the agreement show as clearly as words could, that it was not the intention of Mrs. Preston to claim title to any part of the wall without first reimbursing Mrs. Hall, or her assigns, for its cost. We can perceive no difference because the contract was made after the wall had been built by Mrs. Hall. There was a sufficient consideration to support it in the agreement of Mrs. Hall to allow the use of her part of the wall, and even if there was not, appellant can not question it under the evidence in this case, the contract being under seal and importing a consideration.

In Gibson v. Holden, 115 Ill. 199, which it is claimed by appellant controls the case at bar, and in her favor, in speaking of cases like the one here under consideration, and distinguishing them from the one decided, the court say:

" In all such cases the title to the whole wall may be regarded as appurtenant to the lot of the builder, and so

passing by every conveyance of it until the severance of the one-half by the payment of the purchase money. The sale of the half of the wall does not occur, nor the title to it pass in those cases, until the payment is made, and so, necessarily, it is constructively a sale by the assignee of so much of the wall. His right to the purchase money is not because he is the assignee of a covenant running with the land, but because he is the vendor of so much of the wall."

So here the contract is a recognition by Mrs. Preston that she is not the owner of the wall, and is an undertaking on her part and her assigns to become the owner upon payment therefor, whenever she or they should desire to use the wall. The same principle is announced in the carefully considered case of Tomblin v. Fish, 18 Ill. App. 439, which was decided with express reference to and distinguished from the Gibson case, *supra*. The learned Judge Bailey, in his opinion, quotes the language above from that case.

The Tomblin case is expressly approved by the Supreme Court in Mickel v. York, 175 Ill. 62–70, which holds that the builder of a wall, under a contract similar to the one here in question, except that it was made before the wall was built, was the owner of such wall until the other party to the contract should make payment therefor, and that the former was liable for damages for failure to maintain it in a safe condition. See also Richardson v. Tobey, 121 Mass. 459; Keteltas v. Penfold, 4 E. D. Smith, 133; Roche v. Ullman, 104 Ill. 11–19.

The second contention is not supported by the evidence. It is clear, from a consideration of the whole evidence, that the value of the wall was estimated as of the year when it was used by appellant's intestate, to wit, 1886. The evidence was with reference to the whole year, and there is no evidence that the value of the wall varied at different times during that year. If such were the fact, it was incumbent upon appellant to show it.

The third contention, that Mrs. Hall had no right to contract, is not sustained by the evidence. Her deed to Baldwin is dated May 1, 1883, but was acknowledged May 12, 1883, and it was shown that the deed was not delivered until after the making of the contract with Mrs. Preston.

The fourth contention of appellant, that the instruction given by the court was erroneous, is not tenable. It is argued in this connection that notice of a fact affecting the title to an agent conducting negotiations for the purchase of real estate is not notice to his principal. The authorities cited by counsel are not applicable to this case nor to the instruction in question. The general rule is that notice to the agent is notice to the principal, if the knowledge of the facts is acquired while the agent is acting for his principal. Williams v. Tatnall, 29 Ill. 553.

The evidence shows that the notice to the agent in this case was during the time he was acting for his principal.

Moreover the wall in question stood partly upon lot 9, at the time of its purchase by Alexander McChesney, and constituted an apparent sign of servitude, and was sufficient of itself to put a purchaser upon inquiry as to what was the nature of the servitude. Ingalls v. Plamonden, 75 Ill. 118; Washburn on Easements, *54 and *459.

Fifth. The discontinuance of the suit as to Mrs. Preston and the amendment of the pleadings accordingly were justified by the statute. Hurd's Rev. Stat., Chap. 110, Sec. 24; Black v. Womer, 100 Ill. 328.

As to the sixth claim, we think there was no error. It was incumbent upon the appellant, Judge Ewing's term having expired, to produce to the court, Judge Chytraus, a transcript of the testimony, if necessary, for the consideration of the court on a motion for a new trial. Without the testimony, so far as appears from this record, the court should have overruled the motion. In any event appellant can not complain of the action of the court in considering the transcript presented to it, because no exception was taken. That the court heard the motion in the absence of the pleas of general issue could in no way prejudice appellant. It was conceded that such pleas were filed, and appellant's counsel was directed to substitute the same in making up the record.

The judgment is affirmed.