JONES et al. v. MONROE et al.
(No. 615–4246.)

(Commission of Appeals of Texas, Section B. June 16, 1926.)

**Party walls** ☞9(5)—**Grantees of builder of party wall, whose deed did not mention wall, held entitled to recover on covenant for contribution from adjoining owner.**

Grantees of builder of party wall, whose deed did not mention wall, *held* entitled to recover on covenant for contribution rather than builder from adjoining owner, where no contrary intention was apparent from contract between builder and adjoining owner for construction of such wall.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Suit by C. B. Jones and another against W. T. Monroe and another. Judgment of the trial court was reformed and affirmed by the Court of Civil Appeals (262 S. W. 541), and plaintiffs bring error. Reversed and rendered.

Clark & Clark, of Greenville, and C. A. Sweeton, of Houston, for plaintiffs in error.
Neyland & Neyland and Looney & Bowman, all of Greenville, for defendants in error.

POWELL, P. J. The nature and result of this case have been admirably stated by the Court of Civil Appeals, in an opinion by Chief Justice Willson, as follows:

"Mrs. N. B. Teague and W. T. Monroe, owning adjoining lots, entered into a written contract containing recitals and provisions as follows:

"'Whereas, the said Mrs. N. B. Teague is desirous of erecting a two-story brick building on her lot situated on the south side of West Lee street in block 202, according to the 1913 map of the city of Greenville, Texas; and

"'Whereas, the said W. T. Monroe is the owner of a lot adjoining the Teague lot on the west and for the use and benefit to be hereafter derived from the use of the partition wall between said lots the said Monroe agrees with the said Teague that she shall build the west wall of said building partly on the Monroe lot, that is to say that the west wall of the Teague building be a thirteen inch wall and shall occupy six and one-half inches on the Teague lot and six and one-half inches on the Monroe lot, and for the uses and benefits to be derived as hereinbefore specified, the said Monroe and Teague agree that said partition wall shall be the property of the said Mrs. N. B. Teague and the said W. T. Monroe and Monroe and his assigns shall have the privilege of adjoining on to said wall at any. time, he or they may be ready to erect a building and at the same time that he or they erect said building, that he agrees to pay Mrs. N. B. Teague a sum of money to be agreed upon by two reliable contractors, George Lindsey and John Graham, architect and builder and after Monroe shall have paid for one-half the cost of said wall

then it shall belong to said Monroe & Teague their heirs or assigns.'

"Mrs. Teague afterwards constructed a two-story brick building on her lot and placed the west wall thereof on the line between her lot and Monroe's, as Monroe had agreed she might. The wall cost $924. Later Mrs. Teague conveyed her lot to one Thompson by a deed in which no mention was made of the wall or of the contract with reference to same between her and Monroe. Still later appellants C. B. Jones and J. W. Birdsong became the owners of the lot by mesne conveyances from Mrs. Teague's grantee. Afterwards Monroe constructed a one-story building on his lot, using the west wall of the building constructed by Mrs. Teague as the east wall of his building. The part of the wall of the Teague building so used by Monroe cost $528. This suit was by Jones and Birdsong as the owners of the Teague lot against Monroe to recover $570, which they alleged to be one-half of the cost of the wall constructed by Mrs. Teague as stated. They also made Mrs. Teague a defendant, alleging that she was 'asserting some kind or character of claim' to the amount due from Monroe. In her answer to the suit Mrs. Teague alleged that Monroe's liability was to her and not to Jones and Birdsong, and prayed that she be awarded a recovery of the sum due by him under the contract which, she also alleged, was $570. In his answer Monroe denied that he agreed to pay Mrs. Teague 'one-half of the cost of the wall,' and alleged that his undertaking was to pay only the 'value or cost (quoting) of so much of the wall as was used by him,' such value and cost to be estimated by George Lindsey and John Graham, architects, and then alleged that 'he stands ready to pay the person entitled to same the value of the use and benefit derived by him from joining on the said wall, which, he alleges, is a sum equal to the cost of one-half of that portion of the wall which this defendant has used in the building and construction of the building so constructed by him.'

"The trial court concluded that Monroe's liability was to Mrs. Teague and not to Jones and Birdsong, and that it was for one-half of the cost of the part he used and not for one-half of the cost of the entire wall constructed by Mrs. Teague on the boundary line of the lots. The court having rendered judgment accordingly, Jones and Birdsong prosecuted an appeal, and insist here that Monroe's liability was to them and that it was for one-half of the value of the entire wall. Mrs. Teague also prosecuted an appeal and insists here that the judgment should have been in her favor against Monroe for one-half of the cost of the entire wall instead of for one-half of the cost of the part thereof used by him.

"The contention of Jones and Birdsong is predicated on the view that the right to enforce the undertaking of Monroe to pay one-half of the cost of the wall when he or his assigns used it was one that 'ran with the land' and belonged to them as the owners of the Teague lot at the time Monroe began to use the wall. Mrs. Teague's contention, on the other hand, is on the view that the undertaking of Monroe was personal to her and that she alone had a right to enforce it."

The Court of Civil Appeals affirmed the judgment of the district court, in so far as it decided that Mrs. Teague, rather than Jones and Birdsong, was entitled to recover whatever Monroe owed. But that court held that the latter owed $462, one-half the cost of the entire wall, rather than $264, one-half the cost of the part used by Monroe. Accordingly, the Court of Civil Appeals allowed Mrs. Teague to recover the former amount, reforming the district court's judgment to that extent. Both of the lower courts decreed a lien against the wall in favor of Mrs. Teague until the judgment be paid. See 262 S. W. 541.

Monroe filed no application for writ of error. He accepted the judgment of the Court of Civil Appeals. Therefore, we are relieved from the duty of determining whether the Court of Civil Appeals correctly reformed the judgment of the district court in the particular stated. For a like reason, we are not called upon to determine whether or not both courts correctly decreed a lien upon the wall until Monroe paid the judgment entered. The decisions are in conflict upon these questions, as they are upon the point which is before us under the application granted.

There is but one question we must decide in this case: Was Mrs. Teague or Jones and Birdsong entitled to the $462? Upon this point, the Court of Civil Appeals pretermits any discussion of the authorities in the other states. It was content to follow the Texas decisions as it construed them. Since going very carefully into the decisions upon this question, in Texas and elsewhere, we can understand why the Court of Civil Appeals decided to waive any discussion of the outside cases. The status of the authorities upon the question we are discussing is well stated in a note found on page 941 of 89 Am. St. Rep. as follows:

"The question whether the grantee or assignee of the builder can recover on a covenant for contribution for the cost of a party wall, and whether the grantee or assignee of the covenantor is liable on such covenant, is one upon which much learning and research have been spent, and upon which the decisions are in irreconcilable conflict, and almost equally divided. Even in the same state different results have been reached under facts almost similar, and prior rulings are distinguished in a manner beyond the comprehension of the ordinary person."

This author is correct. Respectable authority can be found to sustain either theory of the question in suit upon the very same state of facts. But there are certain rules which seem to be all but universal, and still others in line with the great weight of authority. When we begin to analyze the real distinctions, the conflicts become more apparent than real and the gleam of light comes to us out of the clouds arising from the great volume of writing by the various courts.

We are thoroughly in sympathy with the recent trend of decisions which is to hold that the *benefits* as well as the *burdens* of these party-wall contracts are covenants running with the land; and, unless a contrary intention of the parties is apparent from the contract itself, we would so hold. Our reason for this conclusion is well stated by several of the authorities. These rights relate to the very nature of the property involved. In other words, when we own a wall and make a deed to it, conveying to our grantees "all the rights and appurtenances thereto in any wise belonging," we think, in the absence of a contrary intention expressed or implied, we have sold to our grantees every right which is connected with that wall. When our neighbor builds into our wall, he pays for a right almost inseparably connected with the wall attached to the land. In this connection, we quote as follows from a few of the authorities:

In the case of Kimm v. Griffin, 67 Minn. 29, 69 N. W. 636, 64 Am. St. Rep. 385, Judge Mitchell says:

"Without going into any general discussion of the very abstruse and technical learning of the books as to what covenants do and what do not run with the land it is sufficient to say that it is settled by the great weight of authority that the covenants of party-wall contracts, like the one under consideration, do run with the land and that all their benefits and burdens —the liability to perform and the right to take advantage of them—both pass to the heir or assignee of the land to which the covenant is attached. This doctrine is really of equitable origin and proceeds upon the theory that such covenants are not to be considered as merely personal or collateral and detached from the land; that they have direct and immediate reference to the mode of occupying and enjoying the land and are intended to be beneficial to the owner as owner and to no other person; that they in effect create a mutual easement in each tract for the benefit of the other. The cases bearing on this subject are largely cited and discussed in the American notes to Dumpor's and Spencer's Cases in 1 Smith, Lead. Cas. 93, 137."

In the case of Southworth v. Perring, 71 Kan. 755, 81 P. 481, 82 P. 785, 2 L. R. A. (N. S.) 87, 114 Am. St. Rep. 527, the Supreme Court of Kansas says:

"Without attempting to declare what general principles relating to the question presented are sustained by the greater number of decisions, we shall decide it upon these considerations: We regard contracts of the character of that here involved as in their nature so related to the real property affected, and so adapted to impose their obligations and bestow their benefits upon the successors in title of the landowners by whom they are made, that the purpose that they shall have that effect is readily to be inferred from the employment of language having any substantial tendency in that direction. In the present case we hold that the use of the clause making the terms of the contract binding upon the heirs, executors,

285 S.W.—67

administrators, and assigns of the parties sufficiently indicates that intention. What the effect of the omission of that provision might have been, we do not now determine."

We quote again from the author of the note in 89 Am. St. Rep., supra, as follows:

"It seems to us that the more reasonable rule is that an agreement between the owners of adjoining premises, whereby one is to build a party wall one-half on the land of each, and the other to pay for one-half of its construction when he uses the wall, creates cross-easements as to each owner, running with the land, with or without notice to the grantee, and is binding on all persons, succeeding to the estates to which such easement is appurtenant, and that a purchaser of the estate of an owner so contracting must be required to pay one-half of the cost of the wall, if it is unpaid for at the time of his purchase, and he afterward avails himself of its benefits. Roche v. Ullman, 104 Ill. 111; Harris v. Dozier, 72 Ill. App. 542; Mickel v. York, 175 Ill. 62, 51 N. E. 848. Under this view the title to the whole wall may be regarded as appurtenant to the lot of the builder, and so passes by every conveyance of it until the severance of the one-half by the payment of the purchase money. The sale of the one-half of the wall does not occur, nor the title to it pass, until the payment is made, and thus, necessarily, it is constructively a sale by the assignee of so much of the wall. His right to the purchase money is not because he is assignee of a covenant running with the land necessarily but because he is a vendor of so much of the wall, for which the party using it is liable. McChesney v. Davis, 86 Ill. App. 380; Voight v. Wallace, 179 Pa. 520, 36 A. 315."

After carefully reviewing the wording of the contract involved in this suit, we do not think it can be said that the contract shows any express or implied intention that these benefits should not run with the land. Therefore, under the rules of law we have just approved, the assignees of this land should recover these benefits.

Therefore, in view of what we have said, we recommend that the judgments of the district court and Court of Civil Appeals be reversed and judgment be rendered by the Supreme Court in favor of plaintiffs in error and against defendant in error W. T. Monroe for the sum of $462, together with interest thereon from May 3, 1923, the date of the district court judgment, at the rate of 6 per cent. per annum. We further recommend, as held by both of the lower courts, that the plaintiffs in error have a lien upon the wall in question until this judgment has been paid. We further recommend that the costs in all the courts be assessed against defendants in error.

CURETON, C. J. Judgments of district court and Court of Civil Appeals reversed, and judgment rendered as recommended by the Commission of Appeals.