**WHITTENBURG et al. v. J. C. PENNEY CO.**

No. 3936.

Court of Civil Appeals of Texas. El Paso.
April 11, 1940.

Rehearing Denied May 16, 1940.

Kelley, Looney & Norvel, of Edinburg, and Charles E. Thompson, of McAllen, for appellants.

Griffin & Kimbrough, of McAllen, for appellee.

PRICE, Chief Justice.

This is an appeal from a judgment in a case instituted and tried in the 93rd District Court exercising jurisdiction in Hidalgo County. The suit was by J. C. Penney Company, a corporation, as plaintiff, against H. E. Whittenburg and wife, and Rio Grande Securities, Inc., as defendants. Plaintiff sought recovery of one-half the cost of the construction of a party wall erected by it on the southerly 8½ inches of Lot 6, Block 13, Town of McAllen, and the northerly 8½ inches of Lot 5, in the same block and town, and the foreclosure of a lien on Lot 5 of said block for the sum sought to be recovered. Defendants answered, and a trial was had before the court resulting in the rendition of a judgment in favor of plaintiff, adjudging the lien in favor of plaintiff against said Lot

5 in the sum of $1,165, and adjudging a foreclosure against defendants. The trial court filed findings of fact and conclusions of law.

There is in reality involved in this appeal but one disputed question of fact; namely, have defendants made such use of the wall in question as would entitle plaintiff to recover contribution on account of its construction of the wall, if its right to contribution be as alleged. The undisputed facts present complication and involve determination of the legal effect thereof.

In 1929, plaintiff bought Lot 6 from Frank E. Osborn, L. L. Davis and D. D. Webber, who also owned Lots 4 and 5. Lot No. 5 lies immediately south of Lot No. 6. Prior to January 13, 1930, plaintiff constructed a building on Lot No. 6 and moved into same and has since said date conducted a business therein. The south wall of such building was 17 inches in thickness and 8½ inches thereof were on the southerly part of Lot 6, and 8½ inches on the northerly part of Lot 5.

On January 30, 1930, L. L. Davis executed and delivered to H. E. Whittenburg, as trustee, a deed of trust on an undivided one-half interest in Lots 4 and 5, to secure a note for $3,000. On February 28, 1931, D. D. Webber mortgaged, by deed of trust, Lots 4 and 5 to the First National Bank of McAllen to secure two notes for $2,000 and $2,400, respectively.

Prior to the erection of plaintiff's building there was an oral agreement entered into between it and the then owners of Lots 4 and 5. The terms of such agreement we shall assume as undisputed, in that such terms were impliedly or expressly found by the trial court. In substance it was agreed that plaintiff might erect the wall, as it did, partly on 6 and partly on 5. In the event the then or future owners of Lots 4 and 5 desired to make use of said wall as a part of a structure erected on 5, that they might do so, paying to plaintiff one-half of the cost of the construction of its south wall. It was contemplated and provided by the parties to this agreement that it should be binding on them and on their successors in title. The cost of the construction of the wall in question was the sum of $4,660.

The title to Lot 5 having passed into Rio Grande Citrus Developers, Inc., by deed, a written agreement was executed between that corporation and plaintiff, whereby it was agreed that upon the said Rio Grande Citrus Developers, Inc., or other owner of Lot 5, paying to plaintiff, or the owner of Lot 6, the sum of $1,165, the former, or the owner of Lot 5, should be entitled to join and make use of said wall, and, upon making the payment, same should become a party wall. The date of this written agreement was June 16, 1931, and same was filed for record August 11, 1931. It is to be borne in mind that this was subsequent to the execution of the two deeds of trust hereinbefore mentioned.

On the 9th day of August, 1932, McAllen State Bank, the then owner of the notes described in the deed of trust hereinbefore mentioned as executed by Webber on Lots 4 and 5 to the First National Bank of McAllen, same dated February 28, 1931, brought suit in the District Court of Hidalgo County, 93rd Judicial District, on same, seeking judgment on the notes against the maker and foreclosure of the lien against the maker and plaintiff here and H. E. Whittenburg, and others. All defendants were personally served except plaintiff here, the service on it was by notice to non-resident. Defendants made default, and judgment was entered on November 22, 1932. This judgment was the stereotyped foreclosure, save that as between plaintiff there (McAllen State Bank) and defendants there (H. E. Whittenburg and wife), it was provided that same should be without impairment of any rights which Whittenburg may have in and to an undivided one-half interest in Lots 4 and 5 by virtue of the deed of trust from Davis to Whittenburg. The cause was No. B–9472 on the docket of said 93rd District Court, and will be hereinafter designated by that number. The order of sale issued on the judgment in cause No. B–9472 was never executed. Thereafter Rio Grande Securities, Inc., defendant here, purchased and had assigned to it this judgment.

On the 22nd day of January, 1935, cause No. A–2232 was filed in the District Court of Hidalgo County, 92nd Judicial District. There will be frequent occasion to refer herein to that case, and same will be at all times referred to as No. A–2232.

In No. A–2232, H. E. Whittenburg was plaintiff, L. L. Davis, Rio Grande Securities, Inc., J. C. Penney Company, and others, were defendants. Plaintiff there sought a foreclosure of the Davis deed of

trust hereinbefore described as to all defendants, and personal judgment against Davis.

Rio Grande Securities, Inc., answered by general demurrer and general denial, and a cross-action in two counts against Whittenburg, Davis, Osborn, Webber, Leslie, Jr., Leslie, Sr., Rio Grande Citrus Developers, Inc., City State Bank & Trust Company, Furst, Thomas, Sinclair Refining Company, and Mr. and Mrs. Wolfe. The parties named were also parties defendant in cause No. B–9472. Said cross-action set up the ownership of said defendant of the judgment in cause No. B–9472, and we quote therefrom as follows: "that because of claims and clouds cast upon its rights and its judgment lien and upon said above described real property, by the cross-defendants in this case, which was the subject of the foreclosure, it has refrained from having an order of sale issued, the said cross-defendants making various and sundry claims to and against said Lots No. 4 and 5, Block 13 * * * all of which was sufficient to cast suspicion and cloud on cross-plaintiff's rights * * *."

It then pleads that: "In order to prevent further litigation and controversy with respect to the rights, title and interest of this cross-plaintiff it shows unto the court that it is entitled to have its rights under the aforesaid judgment clarified, priority of the liens fixed if, in fact, any other liens exist, and that it be permitted to proceed with an orderly foreclosure of its original lien freed from the clouds cast upon it by the cross-defendant."

In its prayer to the first count of the cross-action, it prays that; "Upon final hearing it be granted a decree declaring its judgment lien to be prior and superior to all rights, titles, interests, claims or liens asserted by the cross-defendants; that it recover its costs and that it be permitted by proper orders of this court to proceed with a foreclosure of its lien on the aforesaid real property freed from said clouds," and then concludes with a prayer for general relief.

In the alternative it pleads in count two of the cross-action that the cross-plaintiff is the holder of a "judgment and judgment lien on the entirety of Lots 4 and 5, Block 13 * * * but if on final hearing * * * the court should decide that cross-plaintiff's superior lien attaches to less than the entirety of said two lots or parcels of land and to less than the entirety of all rights, title and appurtenances thereto and improvements thereon," then that it is entitled to have the court "definitely determine what interest therein is covered by its said first and superior judgment lien; and to determine what, if any, interest is owned or held therein by any of said cross-defendants, it being specifically denied that they have any such interest," and by way of prayer in the alternative, following this second count of the cross-action, said cross-plaintiff prays that if the court finds "its lien to cover less than the entirety of the property," that the real property be ordered sold as under execution and the proceeds thereof returned into court for the payment of costs and distribution among the respective parties in proportion to their interest or that, if the premises should be found susceptible of division in kind, then "for an order determining and setting out the part thereof upon which its aforementioned judgment lien is in full force and effect as a prior and superior lien, and that said lien be enforced against that particular portion of the property free and clear of clouds and claims by the cross-defendants herein," and then it prays for general relief.

In cause No. A–2232, to the petition of plaintiff there, J. C. Penney Company, plaintiff here filed a general demurrer, general denial and special answer. In the special answer the oral agreement substantially as hereinbefore outlined is averred; construction of its building; the south wall being common to Lots 5 and 6; its occupancy thereof at the time of the execution of the respective deeds of trust involved in the case; its written contract with Rio Grande Citrus Developers, Inc.; further avers that the Whittenburg lien, by virtue of the premises, is subject to its right in the portion of Lot 5 occupied by the wall. A cross-action is pleaded against Whittenburg seeking to have its claims of title to that portion of Lot 5 quieted as to the claims of Whittenburg. Plaintiff here filed another cross-action against Rio Grande Securities, Inc., and Whittenburg, for all practical purposes, setting up the same facts as in its answer and cross-action to the petition of Whittenburg. To the cross-action of Rio Grande Securities, Inc., praying the quieting of its title to the portion of Lot 5 in question, although not a cross-defendant therein, plaintiff

here answered setting up about the same facts as narrated above. Plaintiff here, through its various pleadings, alleged that the mortgagees and those claiming under them had notice of the alleged contract with reference to the party wall.

The trial was to the court without a jury. A somewhat involved judgment was rendered, the substance of the salient features thereof it is necessary to set forth. It awarded to Whittenburg a recovery in the sum of $5,212.35, and a foreclosure against all parties on an undivided one-half interest in Lots 4 and 5, providing same was a first and superior lien, subject, however, to an easement thereinafter to be mentioned; it recited as to the judgment in cause No. B–9472 that same was valid, subsisting and unsatisfied, and that Rio Grande Securities, Inc., was the then owner thereof; provided that said judgment be merged into the judgment then rendered; that no process should issue out of the judgment in cause No. B–9472 for its enforcement, but such process issue out of cause No. A–2232 for the enforcement of the judgment then rendered, in the manner and to the extent therein provided; that said Rio Grande Securities, Inc., was entitled to collect the sum of $4,303.04, with accrued interest and the cost in cause No. B–9472; and reawarded judgment in its favor in that sum and a foreclosure of the deed of trust lien on an undivided three-fourths interest in and to Lots 4 and 5 (it was parenthetically recited that Rio Grande Securities, Inc., had acquired title to an undivided one-fourth interest in Lots 4 and 5) against all defendants, subordinating same as to the foreclosure decreed in favor of Whittenburg (parenthetically it was recited that the foreclosure was to be subject likewise to the easement thereinafter mentioned). The easement was declared in a subsequent part of the decree in the following language: "(a) That said foreclosure in favor of plaintiff, H. E. Whittenburg, and in favor of defendant— cross-plaintiff, Rio Grande Securities, Inc. —be, and the same are subject, however, to the right and easement of said defendant, J. C. Penney Company, to use and maintain the party-wall now existing, constituting the south wall of its present store building which is located on Lot No. 6, in Block No. 13, of the Original Town of Mc-Allen, the center line of said party-wall being the boundary line between Lots 5 and 6, of said Block No. 13, and said wall extend-

ing over approximately 8-½".on the north part of said Lot 5, and approximately the same distance on the south part of Lot 6, and the easement for the continued existence and maintenance of said wall as against all parties to this suit, their heirs, successors or assigns, is specifically recognized and adjudged."

There was a final disposition of all parties to the judgment, providing in substance that relief sought not granted therein was denied.

Process issued on the judgment in accordance with the provisions thereof. A sale was had and Rio Grande Securities, Inc., and Mrs. Whittenburg bought said property at such sale, each acquiring an undivided one-half interest in Lots 4 and 5, and same were so held on the institution of the suit here.

Sometime in 1937, the defendants in this cause erected a building on Lots 4 and 5, which, it is alleged, on account of the use made of the south wall of plaintiff's building, gave the right of contribution to plaintiff in accordance with the oral agreement hereinbefore recited.

We deem it pertinent to set forth here the substance of the pleadings in the instant case. Plaintiff alleged the oral agreement for the construction of the party wall in substance as we have outlined same, the erection thereof in pursuance of said agreement, the subsequent giving of the two deeds of trust under which defendants claim, the judgment and proceedings in cause No. A–2232. It is alleged that in that cause it was adjudicated that the oral agreement between the owners of Lots 5 and 6, with respect to the construction of the wall, was in fact made; that by virtue thereof plaintiff's right to construct the wall on said Lots 5 and 6 was recognized, and the full ownership of the wall was vested in plaintiff subject to the rights of the owners of 4 and 5 to acquire a half interest in same; that said matters were res adjudicata between the parties to said suit No. A–2232 and all parties subsequently acquiring any right, title or interest in said property.

Plaintiff alleged the use of the wall by defendants and their failure and refusal to pay one-half of the cost of the construction thereof.

The contract of June 6, 1931, between plaintiff and Rio Grande Citrus Developers, Inc., is alleged, providing in effect

that if it, or any subsequent owner of 4 and 5, made use of the wall to pay to the. owners of Lot 6 the sum of $1,165. In substance, notice to the mortgagees of the oral contract in respect to the wall was alleged at the time of the execution and delivery of their respective mortgages. Plaintiff sought judgment for $2,423.99, with interest, and the establishment of an equitable lien on Lot 5 for that amount, or, in the alternative, judgment for $1,165 and interest and the establishment and foreclosure of an equitable lien.

Defendants' answer consisted of a general denial and special plea alleging that the judgment in cause No. B–9472 decided every issue properly raised in the instant case, and that under said judgment it was adjudicated that plaintiff had no right in the premises; denied knowledge of the alleged oral agreement, and denied that any such oral agreement there was; conceded that Lot 5 was subject to the easement of plaintiff's wall, but alleged defendants were entitled to use and enjoy said wall to the same extent as plaintiff; asserted in substance that defendants owned that portion of the wall that had its support on Lot 5; denied any use of the wall except as same incidentally served to close their building on the north end.

Before considering the effect of the judgments in causes No. B–9472 and No. A–2232 on the asserted rights of plaintiff, let us consider the creation, nature and content of such asserted rights. The oral agreement made prior to the erection of the wall in question has been hereinbefore set forth. By virtue of that agreement and the erection of the wall in pursuance thereof, plaintiff acquired the right to construct and maintain same in part on Lot 5 as to the then owners of Lots 4 and 5, and their successors. This right is not seriously disputed by defendants. It is seriously disputed that the rights acquired by the then owners or subsequent owners of Lot 5 were burdened by part of the obligations provided in the agreement. This agreement conferred on plaintiff and its successors the use of a part of Lot 5 as support for the south wall of the building. On payment by the owners of Lot 5, or their successors, it had the obligation to permit the use of its wall.

■ Upon the erection of the wall by plaintiff in accordance with the agreement, the statute of frauds was satisfied and a true easement was created. See Meadows v. Page, 187 Ga. 686, 1 S.E.2d 656; 20 R.C.L., 1103, p. 26.

If the proposition just announced is correct, we think there is very little distinction between this case and the case of McCormick v. Stonehart, Tex.Civ.App., 195 S.W. 883, writ denied; likewise of the principles announced in Jones v. Monroe, Tex.Com. App., 285 S.W. 1055.

What has been heretofore said has not taken into consideration the effect of the judgments in causes No. B–9472 and No. A–2232.

To cause No. B–9472 plaintiff here was a party. It is clear that any right emanating out of the mortgagor subject to the mortgage was subjected to that foreclosure. If the agreement between Rio Grande Citrus Devolopers, Inc., and plaintiff created a new independent right, it was certainly foreclosed against in the decree. That the rights of plaintiff here are alleged to have arisen prior to the mortgage foreclosed by the decree we think is not a material consideration. There was an opportunity given to assert such rights. The purpose of the suit was to subject the interest of plaintiff here in the property to the debt of the plaintiff there. There is no limitation as to the effect of the foreclosure on any right or title of plaintiff here. However, the foreclosure decreed has never been consummated by sale. Defendants here claim under the foreclosure decreed in A–2232 and consummated by order of sale issuing thereon.

In order to determine the rights of the parties here both judgments must be considered. Each was rendered by a different court possessing jurisdiction co-ordinate with the other. The subject matter included in B–9472 was included with numerous other matters in A–2232, and all of the parties here, or those with whom they are in privity, were parties to each of said actions. On the subject matter involved in cause No. B–9472 the decree rendered in A–2232 provided that the foreclosure ordered should be subject to the right and easement of J. C. Penney Company (plaintiff here). No such restriction is to be found in the judgment in B–9472. Presented is a rather unusual situation of two courts, created by the same sovereignty, each awarding relief of different quality between identical parties. No. B–9472, by express provision, left open for future determination the relation of the Whittenburg mortgage lien and that of the First

National Bank of McAllen. Cause No. A–2232 adjudicated this relationship. It recites the decree in B–9472, but it likewise forecloses the lien, part of the subject matter of B–9472. We think the only basis for the process ordered and the subsequent execution thereof was the foreclosure decree in A–2232.

Defendants here elected to rely on the judgment in cause No. A–2232. They sought the reopening of the question as to the rights of the J. C. Penney Company. If this be not strictly correct, at least they failed to appeal from the decree awarding rights to said Penney Company. All the matters adjudicated in No. A–2232 were in the jurisdiction of the court rendering same, save, perhaps, the limitation of the issuance of process in cause No. B–9472.

 The effect or construction of the judgment in No. A–2232 is the real gist of the controversy. It is clear that reserved from the foreclosure therein decreed is the easement provided for in the portion of the decree we have heretofore set out. It does not purport to give to defendants here any right as to said wall further than may be inferred from designating same as a party wall. Extinguishment of the right of reimbursement under the contract creating the easement, which the judgment recognizes and vindicates, is not expressly decreed. At the time of the rendition the right of the owner of Lot 6 to look to the owner of Lot 5 for reimbursement was, at best, but an inchoate equity. Such was the condition at the time of the sale. Whether defendants ever sought to avail themselves of the option given in the agreement was in their control. Lot 5 passed to defendants burdened with an easement; Lot 6 was likewise burdened with an easement as to Lot 5. It would seem just and equitable that Lot 5 should bear the burden conditioned on its easement in Lot 6, as well as enjoy the benefits. Jones v. Monroe, supra.

 In our opinion the judgment in cause No. A–2232 did not extinguish the right of reimbursement which plaintiff had as the owner of Lot 6. It is immaterial as to whether such judgment established that right. The mere fact that the wall in question was a party wall, erected and maintained at the expense of one of the adjoining owners, in the absence of contract to the contrary, gives rise to the right of contribution upon use.

The trial court found in substance that on March 1, 1937, the appealing defendants commenced the construction of a building occupying Lots 4 and 5, and further found, in constructing said buildings, the said defendants made use of the lower half and the footing of plaintiff's south wall in the following particulars:

"1. In closing the entire north end of defendants' building.

"2. In supporting the pilasters upon which the weight of defendants' building rests, and a part of the weight of the floor of said building. · · ·

"3. In bonding the pilasters, beams and footings of the north end of defendants' building to the wall and footings of plaintiff's south wall, thereby tying said structure to said wall of plaintiff.

"4. In serving as a support for the valleys along the north edge of the roof of defendants' building, which valleys are fastened to the plaintiff's south wall and to the roof of defendants' building.

"5. In supporting and carrying electrical conduits, lines, switches and appliances, and wash-rack equipment, water pipes, battery charging equipment, and display and storage shelves and racks for automobile lubricants."

This finding is vigorously assailed by defendants as being unsupported by the evidence. It is contended that no such use of the wall in question was made by defendants as would give rise to the right of contribution by them for the cost of the wall.

 It would seem to be clear that the use of the wall in a manner giving rise to the right of contribution might be provided for by contract between the parties. The general rule is that before this right arises there must be a use of the wall as a party wall. Mere incidental and involuntary use is not such use as gives rise to the right of contribution. Nolan v. Mendere, 77 Tex. 565, 14 S.W. 167, 19 Am.St.Rep. 801; 113 A.L.R., page 471.

 The findings of the trial court above set forth were upon conflicting evidence. We find that there is evidence to support such findings. It would unduly lengthen this opinion to set forth and discuss the plan and construction of the building erected by defendants and the relation that the wall in question bears to such structure. We think under the findings

of fact and the evidence that defendants incorporated into their structure said wall as a part thereof. Such action on their part gave rise to the right to compensation to the plaintiff.

The judgment is affirmed.